Mike MARTIN and Wife, Brenda Martin, Appellants,

v.

SOUTHWESTERN ELECTRIC POWER COMPANY, Appellee.

No. 06–93–00017–CV.

Court of Appeals of Texas, Texarkana.

Aug. 3, 1993.

Rehearing Denied Aug. 31, 1993.

Jim Ammerman, II, Parish, Parish & Ammerman, Gilmer, for appellants.

Herbert Boyland, Harbour, Kenley, Boyland, Smith, Longview, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Southwestern Electric Power Company's president wrote a letter to several company line foremen about safety practices. In the letter he reported critical comments about Mike Martin's work habits. Martin sued SWEPCO for libel, but the trial court rendered summary judgment that he take nothing. Because we find that the statements in the letter are privileged and the summary judgment evidence establishes that they were not motivated by malice, we affirm the summary judgment.

Martin was a lineman for SWEPCO and was seriously injured when he came in contact with high voltage lines. John Turk, SWEPCO's president, became concerned that the line foremen in the East Texas area were not effectively supervising SWEPCO's employees in their safety practices. He wrote a letter to eight line foremen who had responsibilities in the East Texas area. He sent copies of the letter to nine other SWEPCO supervisors. In the letter he referred to Martin's accident and repeated allegations that Martin had a long history of neglecting safety procedures, failing to follow instructions, lack of interest in his work, and lack of interest in the safety book. The letter was distributed only to the SWEPCO line foremen and other supervisory personnel.

The trial court did not state in its order the basis for the summary judgment. In that situation we will affirm the judgment if any theory advanced by the movant for summary judgment is correct. *Carr v.*

*Brasher,* 776 S.W.2d 567, 569 (Tex.1989). SWEPCO moved for summary judgment on the bases that the contents of Turk's letter were not defamatory, but if they were, they were privileged as a matter of law and were not made with malice. The trial judge wrote a letter to counsel stating that he was granting summary judgment because he found that the statements were not defamatory, but the letter is not part of the trial court's order and cannot be considered on appeal as giving the reasons for the judgment. *Taylor v. Taylor,* 747 S.W.2d 940 (Tex.App.—Amarillo 1988, writ denied); *Brazos River Authority v. Gilliam,* 429 S.W.2d 949 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.). In any event, the judgment must be affirmed if there is any legal ground presented to the trial court on which it can be upheld, even if the court's reason was erroneous. *Guaranty County Mutual Ins. Co. v. Reyna,* 709 S.W.2d 647 (Tex.1986).

 We conclude that, even if the statements in the letter can be considered defamatory, they are privileged. A qualified privilege extends to communications made in good faith on a subject in which the author has an interest or a duty, to another person having a corresponding interest or duty. *Dixon v. Southwestern Bell Telephone Co.,* 607 S.W.2d 240 (Tex.1980); *Gillum v. Republic Health Corp.,* 778 S.W.2d 558 (Tex.App.—Dallas 1989, no writ); *Houston v. Grocers Supply Co.,* 625 S.W.2d 798 (Tex.App.—Houston [14th Dist.] 1981, no writ); *Bergman v. Oshman's Sporting Goods, Inc.,* 594 S.W.2d 814 (Tex.Civ.App.—Tyler 1980, no writ). The effect of the privilege is to justify the statements when they are made without actual malice. *Dixon v. Southwestern Bell Telephone Co., supra.* The privilege is peculiarly applicable to communications between employers and employees. *See Dixon v. Southwestern Bell Telephone Co., supra; Bergman v. Oshman's Sporting Goods, Inc., supra.* Where the facts are undisputed and the statements are not ambiguous, the question of privilege is one of law for the court.

*Denton Publishing Co. v. Boyd,* 460 S.W.2d 881 (Tex.1970).

 When publication of a defamatory statement is made under circumstances creating a qualified or conditional privilege, the plaintiff has the burden to prove malice or the want of good faith but, when the defendant moves for summary judgment, the defendant has the burden of proving absence of malice. *Houston v. Grocers Supply Co., supra.* The essential elements of a conditional or qualified privilege are good faith, an interest to be upheld, a statement limiting its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. *See* 50 TEX.JUR.3D *Libel and Slander* § 54 (1986). The summary judgment evidence here establishes conclusively that Turk and the addressees and recipients of his letter had specific duties to supervise SWEPCO's employees in their work and safety practices. The ultimate goal of Turk's letter was to prevent or reduce the number of accidents. The letter was written after Martin had suffered serious work-related injuries. The letter was published only to those who had supervisory duties over linemen.[1]

 To establish malice one must show that the declarant knew the statements were false or that the declarant acted with reckless disregard of whether they were false. *Dun and Bradstreet, Inc. v. O'Neil,* 456 S.W.2d 896 (Tex.1970); *El Paso Times, Inc. v. Trexler,* 447 S.W.2d 403 (Tex.1969). The summary judgment evidence filed by SWEPCO contains an affidavit from Turk stating that he did not have any malice or ill will toward Martin when he wrote the letter, and evidence to support these conclusions. In an excerpt from his deposition, Turk states that he believed the information in the letter to be true based on the investigation report of the Martin accident and on word-of-mouth information that he had received in discussing the accident. Turk's affidavit also states that he relied on the truth of the statements con-

---

1. The dissent complains that Turk selected negative information about Martin to include in the letter; however, the purpose of the letter was not to praise or include a total evaluation of Martin, but rather the letter was written to point out problems that needed to be corrected for the safety of the workers. Thus, it was proper to emphasize behavior that led to Martin's injury and that could lead to other injuries.

tained in the report and information given to him.[2] Reliance on reports and information furnished by other employees in the line of duty under these circumstances could not be considered as reckless disregard of whether such statements were false. This summary judgment evidence serves to negate malice unless it is controverted.

 Martin's response to the motion for summary judgment is supported by his affidavit. He does not directly allege malice on Turk's part, but says, "I know that most of the assertions made in the letter about me are not true and, *therefore: the letter must have been written based on malice directed at me*" (emphasis added). The assertion that the letter was based on malice amounts to a conclusion, and as such, it does not allege concrete facts that would raise an issue under the summary judgment rule. *See Horton v. Montgomery Ward & Co.*, 827 S.W.2d 361 (Tex.App.—San Antonio 1992, writ denied). Because it is based on an erroneous legal standard, the statement is not an affirmative fact that would be admissible in evidence. The sole reason advanced in Martin's affidavit for concluding there was malice was that the assertions were not true. Malice, however, cannot be inferred from falsity of the statement alone. *Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 631 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Cheatwood v. Jackson*, 460 S.W.2d 528, 530 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.). There is no summary judgment evidence raising a fact issue that Turk knew the reports were untrue or acted with reckless disregard of their truth.

Because Turk's statements were privileged and malice was negated, summary judgment was proper.

The judgment of the trial court is affirmed.

BLEIL, Justice, dissenting.

I dissent from the majority's decision. I believe that the statements made by John Turk were defamatory, and I agree with the majority's legal conclusion that Turk had a qualified privilege to communicate the information. It is my view, however, that the summary judgment evidence raises a fact question whether the statements were made in reckless disregard of the truth or falsity of the statements. Therefore, I would reverse the summary judgment.

In summary judgment cases, the burden of showing that there is no issue of material fact is on the movant and all doubts are resolved against the movant.[3] *El Chico Corp. v. Poole*, 732 S.W.2d 306, 315 (Tex. 1987); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979). Here, the summary judgment evidence shows that Mike Martin was injured while on the job with SWEPCO. Thereafter, he returned to work and learned that a letter, written by SWEPCO's president, John Turk, Jr., had been widely circulated throughout the company. This letter attacked his honesty, integrity and reputation.[4] Martin swore that most of the allegations about him in Turk's letter were not true and that, for this reason, the letter must have been written with malice towards him. I believe that the

**2.** In an interview with foreman James Weir concerning the accident, which is attached as a part of the accident report, Weir was asked, "What do you think would cause him [Martin] not to always wear rubber gloves in an area that you would normally require him to do so?" Weir answered, "A combination of several things—his inattention...."

**3.** The majority seems to have wholly neglected to consider this basic standard of review applicable to all appeals from summary judgments.

**4.** The majority mischaracterizes the breadth of the circulation of this letter, claiming that the letter was published only to those who had corresponding duties (see majority opinion, pp. 198, 199). I agree that Turk enjoyed a qualified privi-

lege in writing the letter. The majority's emphasis on its assertion that the letter went only to those with "corresponding duties" mostly relates to the legal question of whether any privilege exists. However, the letter was sent to all of the line managers and line foremen. In the letter, Turk analogized SWEPCO to the military as an organization, saying, e.g., that a sergeant is responsible for a group of men, a master sergeant responsible for a group of sergeants, and so forth up to the "general ranks," saying that it was just like that in the case of SWEPCO. Then, at the conclusion of his letter, he ordered that his letter be distributed in all other SWEPCO divisions. A reasonable inference is that Turk intended, and most likely accomplished, distribution of his letter to every SWEPCO employee.

evidence in response to the summary judgment motion raises a fact question precluding the summary judgment.

In this case, Martin would be required to plead and prove at trial that Turk published the statements about him with actual malice. But, on a defendant's motion for summary judgment in cases like this, the defendant-movant can prevail only as to any statement· on which it can negate actual malice as a matter of law. *Casso v. Brand,* 776 S.W.2d 551, 555 (Tex.1989). This, SWEPCO has not done.

Turk's affidavit says that he wrote the letter relying on a lengthy report from an investigation committee, that he had no reason to believe the statements about Martin were false, and that he held no ill will or malice towards Martin. The motion for summary judgment proof was controverted by Martin, who stated that the contents of the publication were false and that the publication was made with malice.[5] Obviously, with conflicting affidavits as to the truth or falsity of the contents of the publication and as to whether the publication was made with malice, the credibility of the affiant might likely be a dispositive factor in the resolution of this case. Under such circumstances, summary judgment is inappropriate. *Id.* at 558.

In addition to my belief that SWEPCO has not negated actual malice, generally, I also believe it has not negated actual malice on certain specific remarks made by Turk. Turk's various disparaging remarks included that,

(1) Martin had a long history of having to be reminded to wear his safety gloves;

(2) Martin had no interest in his safety book; and

(3) Martin should have been laid off in the past.

Nothing in the report given to Turk supports these allegations. Thus, based on Turk's affidavit and the attached report, SWEPCO has failed to negate the claim that these statements were made with malice.

Furthermore, it seems to be of significant factual importance that Turk selected all the negative information about Martin and included it in the letter, while omitting all of the positive remarks about the man and his work. Martin's line foreman or boss for several years said Martin was a quality worker and that he would be welcomed back on the job, if able. Martin's most senior coworker said that Martin was as safety conscious as anyone else.[6] Actual malice may be inferred from the relation of the parties, the circumstances attending the publication, the terms of the publication itself and from the words or acts of the defendant before, at, or after the time of the communication. *International & G.N.R. Co. v. Edmundson,* 222 S.W. 181, 184 (Tex.Comm'n App.1920, holding approved). A jury should be able to look at Turk's letter, compare it with the report, and consider Turk's selection of only the negative material from a lengthy report as a circumstance from which malice might be inferred. It is quite possible that a fact finder might conclude that, because the letter covered matters not in the extensive report, Turk was exaggerating or "stretching" the truth in order to make his point to the addressees. This could be considered reckless disregard for the truth.

---

5. Before 1989, the law was clear that an affidavit of an interested witness, usually the alleged defamer, as to his or her state of mind to negate malice, even if uncontroverted, was not sufficient evidence to support a summary judgment. *See Bessent v. Times–Herald Printing Co.,* 709 S.W.2d 635 (Tex.1986); *Beaumont Enterprise & Journal v. Smith,* 687 S.W.2d 729 (Tex.1985). However, *Casso v. Brand,* 776 S.W.2d 551 (Tex.1989), overruled those decisions, holding that malice can be negated by an interested witness and that summary judgments are proper in a case like this when there is no *controverting proof. Id.* at 559. In this case, however, summary judgment still is not proper because Martin gave controverting proof.

6. The report does contain various irrelevant coworkers' statements—given in response to the investigator's questions. Statements of this nature included that Martin's wife was not friendly with Martin's fellow workers and that they were of a "different religion," that they did not attend parties or local gatherings, and that Martin had personal problems related to a previous divorce and child custody dispute. A reading of the entire report and the questions asked might make a reader wonder just what sort of information about Martin was being sought.

Martin had a right to a jury determination of the disputed fact questions in this case. TEX. CONST. arts. I, § 15; V, § 10. The summary judgment should be reversed.