# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00409-CV

**GSC Enterprises, Inc., Appellant**

**v.**

**Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas;
and John Cornyn, Attorney General of the State of Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. 98-05733, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

Appellant GSC Enterprises (AGSC@) appeals from the district court=s grant of summary judgment in favor of the Comptroller and the Attorney General (collectively Athe Comptroller@) and denial of GSC=s motion for summary judgment. GSC=s appeal hinges on the interpretation of section 72.103 of the Texas Property Code. *See* Tex. Prop. Code Ann. ' 72.103 (West Supp. 2002). Because our interpretation of section 72.103 supports the district court=s judgment, we will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

GSC is a Texas corporation that issues, administers, and redeems money orders. It typically partners with small retail outlets such as convenience stores and independent grocers. Money orders have blanks in which the purchaser identifies the sender and the payee, but the retailer typically retains only the money order=s amount and serial number. Most money orders are promptly redeemed, but a small percentage remain unredeemed. Purchasers of GSC money orders agree to pay a monthly service charge on unredeemed money orders. Prior to July 1998, GSC had a policy of

charging one dollar per month from the date of purchase if the money order was not redeemed within one year of the purchase date. This policy was generally not enforced against retailers who accepted these money orders. After July 1998, GSC charged one dollar per month from the date of purchase if the money order was not used within two years of the purchase date. A service charge accrued until the money order was redeemed, the service charge exceeded the money order=s face value, or the money order was deemed abandoned.

GSC must track its unredeemed money orders and eventually report them to the Comptroller as abandoned property. At the time of the events germane to this lawsuit, the Texas Property Code deemed a money order abandoned five years after it was issued or five years after the last communication from the owner. Once a money order is considered abandoned, GSC must turn it over to the Comptroller.

After a 1998 audit, the Comptroller issued GSC a deficiency notice for the money orders GSC surrendered in 1996 and 1997, stating that under the Comptroller=s interpretation of the property code, GSC should not have withheld service charges from the money orders. GSC disagreed with the Comptroller=s interpretation and in May 1998, filed a petition for declaratory judgment against the Comptroller. GSC deposited the contested funds in the court=s registry. The Comptroller answered with a general denial and counterclaimed against GSC to recover the deficiency, plus penalties, interest, and attorney=s fees. In 2000, the parties filed competing motions for summary judgment. After hearing the motions, the district court granted the Comptroller=s motion and denied GSC=s motion. By four issues, GSC appeals the judgment, claiming that the trial court erred (1) in its interpretation of the property code, (2) in granting the Comptroller=s motion for summary judgment and denying GSC=s motion, (3) in rendering judgment that GSC take nothing, and (4) in rendering

**2**

judgment that the Comptroller recover penalties and interest. At stake is the $1,689,728.01 deficiency, plus accumulated interest, penalties, and attorney=s fees.[1]

## DISCUSSION

### *Standard of Review*

The parties in this case filed competing motions for summary judgment. When examining cross-motions for summary judgment, the reviewing court should analyze the summary judgment evidence produced by each side and determine all questions presented. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). The reviewing court should then render such judgment as the trial court should have rendered. *Id.*

Both motions for summary judgment turn on the statutory construction of Texas Property Code section 72.103; thus, the case is ideally suited for summary judgment. A[M]atters of statutory construction are questions of law for the court to decide rather than issues of fact.@ *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989). The purpose of summary judgment is to provide a method of terminating a case when it is clear that only a question of law is involved and there is no genuine issue of material fact. *Gaines v. Hamman*, 358 S.W.2d 557, 563 (Tex. 1962); *Jones v. Texas Pac. Indem. Co.*, 853 S.W.2d 791, 794 (Tex. App.CDallas 1993, no writ).

The appellate court reviews issues involving statutory construction *de novo*. *Texas Dep=t of Pub. Safety v. LaFleur*, 32 S.W.3d 911, 915 (Tex. App.CTexarkana 2000, no pet.). The

---

[1] The court awarded the Comptroller penalties of $29,341.38, interest of $21,202.60, plus accumulated interest in the court=s registry, and attorney=s fees.

3

court=s primary task when construing a statute is to give effect to the intent of the Legislature. Tex. Gov=t Code Ann. ' 312.005 (West 1998); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). To accomplish this, the court scrutinizes the statute=s language. *Id.* The court should not Aattribute to the legislature an intention to work an injustice@ or to produce an absurd or unreasonable result. *Southwestern Bell Tel. Co. v. Public Util. Comm=n*, 888 S.W.2d 921, 927 (Tex. App.CAustin 1994, writ denied) (quoting *State v. Mauritz-Wells Co.*, 175 S.W.2d 238, 242 (Tex. 1943)).

**_Property Code Section 72.103_**

When legislative intent is plainly expressed in the language of the statute, the court should give this intent effect. *See* Tex. Gov=t Code Ann. ' 312.005; *Helena Chem. Co.*, 47 S.W.3d at 493. In addition, the court should consider the statute as a whole, in an attempt to maintain harmony among all of the provisions. *Helena Chem Co.*, 47 S.W.3d at 493. The general intent of section 72.103 is evident from its title APreservation of Property.@ The value of unclaimed property is to be maintained. As GSC points out in its brief, the primary purpose of the unclaimed property laws in Texas is to reunite owners with their property. *See Melton v. State*, 993 S.W.2d 95, 97 (Tex. 1999). Property which cannot be reunited with its owner is turned over to the State. *See* Tex. Prop. Code Ann. ' 74.301 (West Supp. 2002). Specifically, section 72.103 provides:

> Notwithstanding any other provision of this title, a holder of *abandoned property* shall preserve the property and may not *at any time*, by any procedure, including a deduction for service, maintenance, or other charge, transfer or convert to the profits or assets of the holder or otherwise reduce the *value* of the property. For purposes of this section, *value* is determined as of the date of the *last transaction or contact* concerning the property.

4

*Id.* ' 72.103 (emphasis added).[2] We look to the statute itself for definitions of terms used. *Hayek v.*

*Western Steel Co.,* 478 S.W.2d 786, 793 (Tex. 1972); 67 Tex. Jur. 3d *Statutes* ' 106 (1989).

AAbandoned property@ as applied to money orders is defined by Texas Property Code as follows:

---

[2] In 2001, the Legislature amended section 72.103, to take effect June 1, 2002, as follows:

Notwithstanding any other provision of this title except a provision of this section relating to a money order, a holder of abandoned property shall preserve the property and may not at any time, by any procedure, including a deduction for service, maintenance, or other charge, transfer or convert to the profits or assets of the holder or otherwise reduce the value of the property. For purposes of this section, value is determined as of the date of the last transaction or contact concerning the property, except that in the case of a money order, value is determined as of the date the property is presumed abandoned under Section 72.102(c). If a holder imposes service, maintenance, or other charges on a money order prior to the time of presumed abandonment, such charges may not exceed the amount of 50 cents per month for each month the money order remains uncashed prior to the month in which the money order is presumed abandoned.

A money order . . . is presumed to be abandoned on the latest of: (1) the fifth anniversary of the date on which the money order was issued; (2) the fifth anniversary of the date on which the issuer of the money order last received from the owner of the money order communication concerning the money order; or (3) the fifth anniversary of the date of the last writing, on file with the issuer, that indicates the owner=s interest in the money order.

Tex. Prop. Code Ann. ' 72.102(c).[3] We have been unable to find any case law interpreting section 72.103 or 72.102(c).

---

*See* Act of May 5, 2001, 77th Leg., R.S., ch. 179, ' 2, 2001 Tex. Gen. Laws 360-61.

GSC=s claim was pending before the 2001 amendments and is governed by the law applicable at that time.

[3] Effective June 1, 2004, money orders will be considered abandoned after seven years instead of five. *See* Act of May 5, 2001, 77th Leg., R.S., ch. 179, ' 1, 2001 Tex. Gen. Laws 360.

GSC argues that after examining the plain language of the statute, one should conclude that the money order is not Aabandoned@until five years after the last transaction or contact regarding the money order. GSC includes as a Atransaction or contact@ its unilateral monthly deductions of service charges from the money order, which begin two years from the money order purchase date.[4] According to GSC, the Avalue@of the money order is what remains at the time the money order is deemed Aabandoned.@

GSC=s position that its service charges constitute a transaction or contact is a strained interpretation that has the additional disadvantage of creating an absurd outcome that the Legislature could not have intended. The words of a statute should be interpreted according to their ordinary meaning, not in a strained manner. *Howell v. Mauzy*, 899 S.W.2d 690, 704 (Tex. App.CAustin 1994, writ denied). Furthermore, the court should not attribute to the Legislature an intention to produce an absurd or unreasonable result. *Southwestern Bell*, 888 S.W.2d at 927. Instead, we presume that the Legislature intended a just and reasonable result. *See Helena Chem. Co.*, 47 S.W.3d at 493. Under GSC=s interpretation, every monthly service charge that GSC levies against an uncashed money order counts as a transaction that resets the moment in time at which the value of the money order is determined. Under this logic, GSC is free to unilaterally reduce the value of a money order by one dollar per month on the strength of its own unilateral assessment against the money order. This allows GSC, by deducting service charges, to appropriate the entire value of the money order in direct contravention of the statute=s primary purposeCto preserve the value of unclaimed property.

---

[4] The statute does not define Acontact@ or Atransaction.@

**7**

Therefore, GSC=s interpretation produces an absurd or unreasonable result that we presume the Legislature did not intend.

If the Alast transaction or contact@ is not the date of GSC=s most recent imposition of a monthly service charge, it must be the date of the last contact or transaction between the owner of the money order and its issuer. Having set the value of the property at the last contact or transaction between the purchaser and the retailer or holder, the language regarding Avalue@ assumes a logical significance. According to the language of section 72.103, the Alast transaction or contact@ is the moment that the Avalue@ of the property is to be fixed, for purposes of preservation. Typically, the last contact or transaction between the purchaser of the money order and the holder is the moment when the money order is issued. According to the language of the statute then, the value of the property to be preserved will almost always be the face value of the money order. Thus, GSC may not reduce the value of the money order below its face value in the absence of further contacts or transactions involving the owner and the issuer.

GSC also suggests that it is significant that the Legislature chose to call money orders Aabandoned,@ without reference to a period of Ainactivity.@ It points to the fact that the Legislature called the pre-abandonment period during which service charges may not be deducted from a depository account or a safe deposit box a period of inactivity. *See* Tex. Prop. Code Ann. '' 73.003; .101 (West Supp. 2002). According to GSC, the Legislature could have devised a similar scheme for money orders and chose not to do so. We agree that every word excluded from a statute must be presumed to have been excluded for a purpose. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981). But when we consider the statute as a whole, in an attempt to maintain harmony among all of the provisions of the Unclaimed Property Title, we note that Chapter 73

**8**

addresses not only depository accounts and safe deposit boxes, but also checks. *See* Tex. Prop. Code

Ann. ' 73.102.[5] A money order is more analogous to a check than a safe deposit box or an account.

Unlike safe deposit boxes and depository accounts, the contents of which may constantly fluctuate, a

check, like a money order, is a one-time transaction that represents one unfluctuating value. Section

73.102 speaks of Aabandonment@ of checks, without reference to a period of inactivity. *Id.* In

attaching no significance to the lack of inclusion of a period of inactivity with regard to money orders,

we do not create disharmony between the provisions of the Act.

We conclude that section 72.103 unambiguously provides that a holder of a money

order may not deduct a contracted-for service charge from the money order that is eventually deemed

---

[5]

> A check is presumed to be abandoned on the latest of: (1) the third anniversary of the date the check was payable; (2) the third anniversary of the date the issuer or payor of the check last received documented communication from the payee of the check; or (3) the third anniversary of the date the check was issued if, according to the knowledge and records of the issuer or payor of the check, during that period, a claim to the check has not been asserted or an act of ownership by the payee has not been exercised.

Tex. Prop. Code Ann. ' 73.102 (West Supp. 2002).

abandoned property. After five years, the holder of the money order is to submit the entire face value to the Comptroller. Issue one is overruled.[6]

### *Penalties and Interest*

Having held that the Comptroller=s interpretation of the statute is correct, we now turn to GSC=s argument that the Comptroller abused its discretion by failing to waive penalties and interest on the withheld service charges under section 74.707(a) of the property code. *See id.* (AThe comptroller may waive penalty or interest imposed on delinquent property if the comptroller determines that the holder has made a good faith effort to comply with Chapters 72-75.@). GSC argues that the joint stipulation it entered into with the Comptroller by which it agreed to pay some of the disputed funds into a court registry is evidence of its good faith. The Comptroller argues that there is no statute authorizing judicial review of a section 74.707 determination, and, alternatively, that its determination was not an abuse of discretion. As GSC cites no authority in its brief for its argument, we find it has waived this issue on appeal. *See* Tex. R. App. P. 38.1(h); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex. 1983). Furthermore, we note that the Comptroller waived *some* of the penalties and interest pursuant to the parties= joint stipulation. We overrule issue four.

### CONCLUSION

Because our interpretation of Texas Property Code section 72.103 supports the district court=s judgment, we overrule all of GSC=s issues on appeal and affirm the judgment of the district court.

---

[6] GSC=s second and third issues are encompassed by issue one and, thus, are also overruled.

David Puryear, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed:   August 30, 2002

Publish