# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00640-CV

**Rhett Webster Pease, Appellant**

**v.**

**Barbara Bembry, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
## NO. GN002467, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a summary judgment granted to appellee Barbara Bembry, presiding Justice of the Peace for Precinct 2, Travis County, after appellant Rhett Webster Pease accused her of slandering him by providing his name to police in connection with an investigation into a bomb threat at the building housing the Justice of the Peace for Precinct 2. In her motion for summary judgment, Bembry raised two affirmative defenses: judicial and qualified immunity. Pease raises three issues on appeal. First, he denies Bembry's claim of immunity. Second, he argues that Bembry's court did not have jurisdiction over his title dispute. And third, Pease says he raised

a fact issue as to whether the statement was defamatory.**¹** We find that the communication was privileged and affirm the trial court's judgment.

## PROCEDURAL AND FACTUAL BACKGROUND

We begin with a review of the events leading to Bembry's report to police connecting Pease with the bomb threat. Pease had appeared in Bembry's court on two occasions attempting to prevent the foreclosure of his home.**²** The last appearance occurred on August 31, 1999, when Bembry presided over an eviction proceeding between Pease and his mortgage company. Bembry signed the eviction order, which called for Pease's eviction on September 20, 1999. At approximately 2:00 p.m. on the day of the eviction, an unidentified male called one of the main numbers to the building housing Bembry's court to report that there was a bomb in the building. The building was evacuated and searched by Austin police. No bomb was found.

---

**¹** Only one of the three issues raised by Pease is before us. This is an appeal from a summary judgment in Pease's civil suit against Bembry and not from his eviction. Whether Bembry's court had jurisdiction to hear the title dispute is an issue Pease must raise in county court in an appeal from his eviction proceeding. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.001 (West 1997). Pease also claimed that he raised a fact issue as to whether Bembry defamed him by associating him with the Republic of Texas. He raises the issue but fails to adequately argue it on appeal. *See GSC Enters. v. Rylander*, 85 S.W.3d 469, 475 (Tex. App.—Austin 2002, no pet.). The issue is waived. *Id*. The only issue properly preserved and presented in this appeal is the question of immunity.

**²** Bembry testified that Pease had appeared in her court on two occasions, both related to the eviction proceedings that led to appellant's eviction on September 20, 1999. After his eviction, Pease sued his mortgage company and Bembry in a separate suit alleging wrongful foreclosure. *Pease & Pease v. Principal Mortgage Co.*, No. 03-02-491-CV, slip op. at 2, 2004 Tex. App. LEXIS 4279, at *2 (Tex. App.—Austin May 13, 2004, no pet. h.).

During their investigation into the bomb threat, police asked Bembry whether she had experienced any recent trouble in her court. She said she had and gave them Pease's name. The police report said Bembry

> thinks it's the work of: Pease, Rhett W/M age 40 unknown DOB. She said Pease is about to be removed from a property and constables attempted to remove him this morning and he wouldn't come out. Pease told them he won't come out and will have an army waiting for them when they come again. Bembry said Pease claims to be Republic of Texas and doesn't recognize the police or constables. Bembry felt Pease called in the bomb threat to stall the return of the constables.

Following an investigation, Pease was charged with calling in the bomb threat. While preparing his defense, he discovered the police report. He then sued Bembry for slander, conversion, intentional infliction of emotional distress, and "due process."[3] He claimed Bembry had "made false and malicious statements that charged plaintiff with a crime, and is slanderous per se. Said charges have permanently labeled the plaintiff with the police as dangerous and have put the plaintiff in risk of bodily injury and possibly death." Pease's suit against Bembry was abated during the pendency of his prosecution. After he was acquitted of the charge, the stay was lifted. Bembry then filed a motion for summary judgment. *See* Tex. R. Civ. P. 166a(c). In her motion, Bembry asserted several affirmative defenses. She contended that the statement was not slanderous and that she was entitled to judicial or qualified immunity. The trial court granted her motion without identifying the grounds.

---

[3] The conversion, intentional infliction of emotional distress, and due process claims were not appealed.

3

## ANALYSIS

**Standard of Review**

The standard for reviewing a motion for summary judgment is well established: (i) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law; (ii) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (iii) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Gustafson v. City of Austin*, 110 S.W.3d 652, 655 (Tex. App.—Austin 2003, pet. denied). A movant must either negate at least one essential element of the non-movant's cause of action, or prove all essential elements of an affirmative defense. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). Because the motion for summary judgment raised multiple grounds and the trial court did not specify which ground it relied on, we will affirm if any of the grounds are meritorious. *Gustafson*, 110 S.W.3d at 655.

**Discussion**

Pease sued Bembry for slander based on her report to police that he was a possible suspect in the bomb threat. Bembry then filed a motion for summary judgment that was based on

4

two affirmative defenses: absolute and qualified immunity. *See General Motors Acceptance Corp. v. Howard*, 487 S.W.2d 708, 711 (Tex. 1972).

Slander is a false oral statement made to another without justification or excuse. *Randall's Food Mkts.*, 891 S.W.2d at 646; *Cain v. Hearst Corp.*, 878 S.W.2d 577, 580 (Tex. 1994). There are three affirmative defenses to slander. In a suit brought by a private individual, truth is an affirmative defense. *Randall's Food Mkts.*, 891 S.W.2d at 646. "Privilege" is also an affirmative defense.[4] *Denton Publ'g Co. v. Boyd*, 460 S.W.2d 881, 884 (Tex. 1970). The word "privilege" used in the context of defamation means "[a]n exemption from liability for the speaking or publishing of defamatory words concerning another, based on the fact that the statement was made in the performance of a political, judicial, social or personal duty." *Black's Law Dictionary* 1077 (5th ed. 1979); *see also Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 768 (Tex. 1987) (distinguishing privilege from immunity); *Cranfill v. Hayden*, 80 S.W. 609, 613-14 (Tex. 1904) (same).

There are two types of privileges: absolute and qualified. *Hurlbut*, 749 S.W.2d at 768. "An absolute privilege is more properly thought of as an immunity because it is based on the personal position or status of the actor." *Id.* (citing W. Keeton, *Prosser & Keeton on the Law of Torts*, § 16 at 109 (5th ed. 1984)). Judges, for example, are entitled to absolute immunity for their statements made during the course of a judicial proceeding. *James v. Brown*, 637 S.W.2d 914, 917 (Tex. 1982). This absolute immunity extends to any statement made by a judge in open court or

---

[4] As we discuss below, while there is a difference between "privilege" and "immunity," the terms are often used interchangeably.

during pre-trial hearings. *Id.* In contrast, "[p]rivileges of the second class, the conditional or qualified privilege, are true privileges because they arise out of the occasion upon which the false statement is published." *Hurlbut*, 749 S.W.2d at 768. One such occasion giving rise to the qualified privilege occurs when a person makes a statement to police identifying someone as a potential suspect in the commission of a criminal offense. *Id.* (citing Restatement (Second) of Torts § 595 (1977), relating to communication made to police under reasonable belief that third party intends to commit serious crime); *Martin v. Southwestern Elec. Power Co.*, 860 S.W.2d 197, 199 (Tex. App.—Texarkana 1993, writ denied); *see also Zarate v. Cortinas*, 553 S.W.2d 652, 655 (Tex. Civ. App.—Corpus Christi 1977, no writ) ("It is obviously vital to our system of criminal justice that citizens be allowed to communicate to peace officers the alleged wrongful acts of others without fear of civil action for honest mistakes."). In *Cranfill*, the supreme court distinguished an absolute immunity from a qualified privilege:

> If a defamatory publication is absolutely privileged, the occasion justifies the language and no action arises. If the defamatory words are published on an occasion not privileged, and are not justified, malice is implied, for the reason that every act intentionally done to the damage of another, without legal justification or excuse, is in the eye of the law malicious. But a defamatory publication which is conditionally privileged occupies a middle ground; that is to say, the publication is privileged provided it was actuated by a sense of duty growing out of the occasion, and provided it was not malicious. When the court finds that the publication is conditionally privileged, the effect of the holding is to cast upon the plaintiff the burden of proving that malice prompted the act—not merely malice which arises by implication of law, but malice in fact, otherwise denominated actual malice. . . . Clearly where the defendant acts from a desire to do his duty to his neighbor, to an association of which he is a member or to the public at large, and without a desire to injure the plaintiff, he is protected if the occasion be such as to justify his action.

*Cranfill*, 80 S.W. at 613-14.

6

It is within the province of the court to determine whether the publication was conditionally privileged. *Denton Publ'g*, 460 S.W.2d at 884. The qualified privilege is lost when the communication is made with malice. *Randall's Food Mkts.*, 891 S.W.2d at 646. To invoke the privilege on summary judgment, the defendant "must conclusively establish that the statement was made with an absence of malice." *Id*.; *Martin*, 860 S.W.2d at 199. Malice sufficient to overcome a qualified privilege in a defamation action requires a showing that the defendant acted with knowledge or in reckless disregard of the falsity of the publicized matter. *Martin*, 860 S.W.2d at 199.

While Bembry pleaded entitlement to judicial and qualified immunities, we address only whether qualified immunity applies and express no opinion on whether she was entitled to judicial immunity.

As the movant for summary judgment, Bembry was required to negate malice. *See id*. Bembry submitted an affidavit and a transcript of portions of her testimony as a witness in Pease's criminal trial. *See* Tex. R. Civ. P. 166a(c) (summary judgment may be based on uncontroverted affidavit of interested witness provided it is "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted"). She averred that on the day the threat was phoned into the building, she had been working with the constables who were attempting to evict Pease. She also said that at the time police questioned her, she had Pease's file in her hand "because of the fact that we'd just got through going through yet another discussion about whether we could serve the writ." She gave police Pease's name because they specifically asked her whether she had been in contact with anyone who had been

7

aggressive or hostile toward her. She said that she felt that Pease had been aggressive, hostile, and uncooperative the two times he had appeared in her court. She said she had also heard through law enforcement officials that Pease had threatened to resist eviction with force. She said given these circumstances—Pease's demeanor toward her in court, his immediately pending eviction, her work that day on Pease's eviction, his threats of force—it was her reasonable belief that Pease had made the threat. We conclude that Bembry's evidence served to negate malice.

Once Bembry presented evidence that her statement was made without malice, Pease had to present evidence sufficient to raise a fact issue. *Denton Publ'g*, 460 S.W.2d at 884; *Martin*, 860 S.W.2d at 200. Pease's response to Bembry's summary judgment consisted of an affidavit objecting to Bembry's evidence. Much of his affidavit was devoted to contesting Bembry's jurisdiction over the eviction proceeding. The remainder consisted of attacks on Bembry including an accusation that she conspired with the constables and the moving company to commit "assault with bodily injury under Bembry's writ" and to make the bomb threat "in order to deny justice to the affiant." He also said that Bembry's comments about him were untrue, as evidenced by his acquittal.

We conclude that Pease failed to present any evidence that Bembry's statement to police was made maliciously. *See Denton Publ'g*, 460 S.W.2d at 884; *Martin*, 860 S.W.2d at 200. Pease's response failed to raise an issue of fact as to whether Bembry acted with knowledge or in reckless disregard of the falsity of the publicized matter. *See Randall's Food Mkts.*, 891 S.W.2d at 646. And, although Pease attempted to make an issue of his acquittal, we note that even though the allegations turned out to be unproven, malice "cannot be inferred from the falsity of the statement

8

alone." *Martin*, 860 S.W.2d at 200. Consequently, we overrule Pease's sole issue considered and affirm the trial court's judgment.

## CONCLUSION

We conclude that Bembry's communication was privileged and affirm the trial court's judgment.

_____

David Puryear, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   July 15, 2004

9