Opinion filed June 15, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed June 15, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00336-CV 

                                                    __________

 

                  FREEDOM
COMMUNICATIONS, INC. D/B/A ODESSA

                                 AMERICAN,
DAVID JAY LEE, AND

                                      MIDESSA
TELEVISION D/B/A

                                            KWES-TV
9, Appellants

 

                                                             V.

 

                                  JOSE
SPENCER SOTELO, Appellee

 



 

                                          On
Appeal from the 70th District Court

 

                                                           Ector County, Texas

 

                                                Trial
Court Cause No. A-119,370

 



 

M E M O R A N D U M  
O P I N I O N

 








This is
an interlocutory appeal from the denial of motions for summary judgment.  Jose Spencer Sotelo sued Freedom
Communications, Inc. d/b/a Odessa American, David Jay Lee, and Midessa
Television d/b/a KWES-TV 9 (the media defendants) for libel.  The media defendants moved for summary
judgment, among other things, on the basis of the fair report privilege under
the First and Fourteenth Amendments of the United States Constitution, the
Texas Constitution, and statutory privileges under the Texas Civil Practice and
Remedies Code.  The trial court denied
the summary judgment motions, and the media defendants bring this accelerated
appeal.  Because we hold the media
defendants in this case have privilege, we reverse and render judgment in favor
of the media defendants.

 This
interlocutory appeal arises out of a newspaper article and news broadcasts
which incorrectly labeled Sotelo as a sex offender.  Both the newspaper article and news broadcasts
were based on a news release issued by the Odessa Police Department (OPD).  On April 29, 2005, OPD made available to
journalists a news release that detailed a sex offender compliance inspection
that OPD had conducted the day before. 
The purpose of the sex offender compliance inspection, as explained in
the news release, was to determine whether sex offenders in the City of Odessa
and Ector County had complied with their obligation to register with local
authorities.  The news release included
the names of two individuals who were arrested as part of the compliance
inspection.  Sotelo was listed as one of
the two individuals.  Printed next to
Sotelo=s name
were references to two warrants for his arrest, although there were no warrants
against him for sex offenses.  The
warrants against Sotelo were for (1) Theft-Class A and (2) False ID to Peace
Officer-Class B.  The news release,
entitled ASex
Offender Compliance Inspection,@
provided:

On
April 28, 2005, members of the ARegistration,
Enforcement and Apprehension Program@
(R.E.A.P.), began a compliance inspection of registered sex offender[s] in
Odessa and Ector County.  During the
evening hours of the 28th, forty-five personnel from numerous law enforcement
agencies conducted compliance inspections at the residences and places of
employment of registered sex offenders. 
These compliance inspections are conducted to maintain accurate records
of residential, employment, and vehicle information of offenders within our community.  

 

On
April 28, 2005, 155 sex offenders were contacted and inspections were conducted
on information they are required to submit to their local law enforcement
agency as required by their sentences. Two (2) are in custody at either the
Ector County Law Enforcement Center or Ector County Youth Center.  There are 23 who have not been
contacted.  Of these twenty-three (23)
there are three (3) active investigations that have been initiated to determine
if the subjects have absconded.  (A
number of these offenders are employed during nighttime hours at oilfield
leases, drilling rigs, etc.)

 

Arrested:

Joel Jackson, B/M, DOB-12-10-68

Fail to Comply as Sex Offender Felony 3,
Assault-Class C Family Violence

 








Jose Spencer Sotelo, H/M, DOB 9-2-66

Warrants: Theft-Class A, False ID to Peace
Officer-Class B

 

NOTICE:         If you are a registered sex offender and law enforcement
personnel did not contact you during the evening of April 28, 2005, it is
imperative that you contact your registering agency by 1500 hours on April 29,
2005 (emphasis added).

 








In both the newspaper article and news broadcasts,
Sotelo=s picture
was shown in conjunction with the sex-offender-compliance-inspection
story.  The article, published on April
30, 2005, in the Odessa American, reported all the information provided
by the OPD news release.[1]  The title of the article printed in large
bold letters was AOfficers
work to keep tabs on sex offenders.@  Mug shot photographs of Sotelo and another
man were printed under the main title. 
Under each of the two photographs was the title ASEX
OFFENDER.@  The photographs were provided by Gary Duelser
of the Ector County Sheriff=s
Department to the Odessa American via e-mail to David Jay Lee.   In the e-mail, Duesler stated:  A[A]ttached
are two mug shots to match Odessa Police Dept=s
press release re: Sex [O]ffenders Compliance.@

The news broadcasts aired on KWES nightly news on
April 29, 2005, at 10:00 p.m. and on April 30, 2005, at 6:00 p.m.  The two broadcasts were identical to each
other and reported the information in the news release.  The Odessa Chief of Police sent the news
release by facsimile to KWES Producer Enza Locascio.  Jay Hendricks, the news director, approved
the story.  The video portion of the
broadcasts featured Sotelo=s
and another man=s mug
shot photographs during the following oral commentary:

Odessa police along with several law enforcement
agencies took part in a sex offender compliance inspection.  These two men . . . Joel Jackson and Jose
Sotelo . . . arrested during that inspection. 
These are done to keep accurate records about offenders who live in our
community.  Jackson was arrested for
failing to comply as a sex offender. 
Sotelo . . . for other outstanding warrants.

 








After the news broadcasts were aired and the
newspaper article was published, Sotelo brought a libel suit against the media
defendants.[2]  All of the media defendants below filed
motions for summary judgment that the trial court denied in two separate
orders.  Pursuant to Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(6) (Vernon Supp. 2005), the
media defendants bring this accelerated, interlocutory appeal from the denial
of their motions for summary judgment.  

The denial of a summary judgment may be appealed
when a court:

[D]enies
a motion for summary judgment that is based in whole or in part upon a claim
against or defense by a member of the electronic or print media, acting in such
capacity, or a person whose communication appears in or is published by the
electronic or print media, arising under the free speech or free press clause
of the First Amendment to the United States Constitution, or Article I, Section
8, of the Texas Constitution, or Chapter 73 [Tex.
Civ. Prac. & Rem. Code Ann. ch. 73 (Vernon 2005)].

 

Section 51.014(a)(6).

We apply the same standard of review for the
denial of a summary judgment as for the granting of a summary judgment.  Ervin v. James, 874 S.W.2d 713, 715
(Tex. App.CHouston
[14th Dist.] 1994, writ denied).  In a
traditional summary judgment motion brought under Tex. R. Civ. P. 166a(c), the moving party has the burden of
showing that there is no genuine issue as to any material fact and that it is
entitled to judgment as a matter of law. 
Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211,
215 (Tex. 2003).  To prevail as a
defendant, the movant must either negate at least one element or prevail on a
defense for each of the plaintiff=s
causes of action.  Am. Tobacco Co. v.
Grinnel, 951 S.W.2d 420, 425 (Tex. 1997). 
To meet this burden, the defendant-movant must present summary judgment
evidence that establishes each element of the affirmative defense as a matter
of law.  Ryland Group, Inc. v. Hood,
924 S.W.2d 120, 121 (Tex. 1996).  We
review the trial court=s
summary judgment de novo.  Provident
Life, 128 S.W.3d at 215.  We take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s
favor.  Id.  A genuine issue of material fact exists if
the nonmovant produces more than a scintilla of evidence establishing the
existence of the challenged element.  Morgan
v. Anthony, 27 S.W.3d 928, 929 (Tex. 2000). 









On appeal, the media defendants assert that the
trial court erred in denying the motion for summary judgment because, as a
matter of law, the statements (1) were not false; (2) were not defamatory; (3)
were not made with malice, or in the alternative, were not negligently
published; (4) were substantially accurate and were protected by the fair
report privilege under the First Amendment; (5) were protected by the statutory
privileges set forth in Section 73.002(b) of the Texas Civil Practice and
Remedies Code; and (6) were protected by the incremental harm doctrine. 

Where
the facts are undisputed and the language used in the publication is not
ambiguous, the question of privilege is ordinarily one of law for the
court.  Denton Publ'g Co. v. Boyd,
460 S.W.2d 881, 884 (Tex. 1970); Christy v. Stauffer Publ=ns, Inc., 437 S.W.2d 814 (Tex. 1969).    

Section 611 of the Restatement (Second) of Torts
provides that A[t]he
publication of defamatory matter concerning another in a report of an official
action or proceeding or of a meeting open to the public that deals with a
matter of public concern is privileged if the report is accurate and complete
or a fair abridgement of the occurrence reported.@  Restatement
(Second) of Torts § 611 (1977).  The privilege Aextends
to the report of . . . any action taken by any officer or agency of the
government of the United States, or of any State or of any of its subdivisions.@ 
Restatement (Second) of Torts §
611 cmt. d (1977).  A[T]he privilege exists even though the
publisher himself does not believe the defamatory words he reports to be true
and even when he knows them to be false.@  Restatement
(Second) of Torts § 611 cmt. a (1977). 
AThe
reporter is not privileged under this Section to make additions of his own that
would convey a defamatory impression.@
Restatement (Second) of Torts §
611 cmt. f (1977).  Thus, the
publications should be compared, not with actual fact, but with the
governmental reports that defendants republished.  Mathis v. Philadelphia Newspapers, Inc.,
455 F. Supp. 406, 417 (E.D. Pa. 1978). 
After comparing the newspaper article and the broadcasts to the news
release issued by OPD, we find that both the newspaper article and the
broadcasts were accurate and complete reports, or a fair abridgement, of the
news release issued by OPD.

We note that the policy given by the U.S. Supreme
Court in Cox Broadcasting is instructive under these facts although that
case dealt with an invasion of privacy claim when a rape victim=s name was obtained from an indictment
and was subsequently televised during a broadcast. Publishing a rape victim=s name was prohibited by a Georgia
statute.  Cox Broad. Corp. v. Cohn,
420 U.S. 469 (1975).  The Court stated:








[I]n
a society in which each individual has but limited time and resources with
which to observe at first hand the operations of his government, he relies
necessarily upon the press to bring to him in convenient form the facts of
those operations.  Great responsibility
is accordingly placed upon the news media to report fully and accurately the
proceedings of government, and official records and documents open to the public
are the basic data of governmental operations.

 

Cox Broad., 420 U.S. at 492.

Other courts have recognized the important
protection afforded by the fair report privilege because the privilege allows
news media to report on the actions and statements of public officials.  See Wright v. Grove Sun Newspaper Co.,
873 P.2d 983, 986-87 (Okla. 1994) (stating Athe
damage by reputational harm which goes unredressed because of the fair
report privilege defense must be subordinated to the larger societal
interests in the values which the privilege protects@);
Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1097 (4th Cir. 1993).  Press releases issued by law enforcement or
governmental agencies have triggered the application of the fair report
privilege.  See, e.g., Alsop v.
Cincinnati Post, 24 Fed. Appx. 296, 297-98 (6th Cir. 2001); Stewart v.
Sun Sentinel Co., 695 So.2d 360, 362 (Fla. Dist. Ct. App. 1997); Steer
v. Lexleon, Inc., 472 A.2d 1021, 1024 (Md. Ct. Special App. 1984); see
also Yohe v. Nugent, 321 F.3d 35, 42-44 (1st Cir. 2003); Mathis, 455
F. Supp. at 415-18. Without this rule, the news media would be forced to check
the accuracy of all information and statements released by governmental
officials and agencies.  See Reuber v.
Food Chem. News, Inc., 925 F.2d 703, 712 (4th Cir. 1991).

Moreover, we also hold that the newspaper article
and the broadcasts fall under the privilege afforded by Section 73.002(a),
(b)(1)(B), and (b)(2) of the Texas Civil Practice and Remedies Code which
provide:

(a) The publication by a newspaper or other
periodical of a matter covered by this section is privileged and is not a
ground for a libel action.  This
privilege does not extend to the republication of a matter if it is proved that
the matter was republished with actual malice after it had ceased to be of
public concern.

 

(b) This section applies to: 

 

(1) a fair, true, and impartial account of:

 

. . . .

 

(B) an official proceeding, other than a judicial
proceeding, to administer the law;

 

. . . .

 








(2) reasonable and fair comment on or criticism of
an official act of a public official or other matter of public concern
published for general information.

 

This statutes provides that certain matters
published in a newspaper are privileged and not actionable as libel.  In Denton Publishing, the newspaper
article in question:

[W]ould
be within the privilege provided by statute as long as it purported to be, and
was, only a fair, true and impartial report of what was stated at the meeting,
regardless of whether the facts under discussion at such meeting were in fact
true, unless the report was made with malice.

 

460 S.W.2d at 883 (under predecessor statute to Section 73.002)
(citing, inter alia, Section 611). 
Likewise, the First Court of Appeals had to determine whether an article
containing allegations and testimony from a trial court record fell under
Section 73.002(a) and (b)(1)(A), allowing a conditional privilege for fair,
true, and impartial account of a judicial proceeding. Texas Monthly, Inc. v.
Transamerican Nat. Gas Corp., 7 S.W.3d 801, 805 (Tex. App._Houston
[1st Dist.] 1999, no pet.).  The article
is indeed a Afair, true,
and impartial@ account Ain reference to the court record.
. . . If the effect on the reader=s
mind would be the same, any difference between the statements made in the
record and the media account of the proceeding should be disregarded.@ 
Id.  at 807 (emphasis
added) (citing Finklea v. Jacksonville Daily Progress, 742 S.W.2d
512, 515 (Tex. App._Tyler 1987, writ dism=d w.o.j.)).  Likewise, under Section 73.002(b)(2), the
proper comparison should be between a news report or broadcast and an otherwise
unprivileged record of the state or federal government.

The qualified privilege is lost when the
communication is made with malice.  Randall=s Food Mkts., Inc. v. Johnson, 891
S.W.2d 640, 646 (Tex. 1995).  To invoke
the privilege on summary judgment, the defendant Amust
conclusively establish that the allegedly defamatory statement was made with an
absence of malice.@  Id.; Martin v. Sw. Elec.
Power Co., 860 S.W.2d 197, 199 (Tex. App.CTexarkana
1993, writ denied).  Malice sufficient to
overcome a qualified privilege in a defamation action requires a showing that
the defendant acted with knowledge or in reckless disregard of the falsity of
the publicized matter.  Id.  Affidavits from interested witnesses will
negate actual malice as a matter of law only if they are Aclear, positive and direct, otherwise
credible and free from contradictions and inconsistencies, and could have been
readily controverted.@  Rule 166a(c); see also Huckabee v. Time
Warner Entm=t Co.,
19 S.W.3d 413, 424 (Tex. 2000). 








Freedom Communication=s
summary judgment proof consisted of David Jay Lee=s
affidavit wherein he stated that he never acted with malice or knowingly wrote
an untrue statement about Sotelo and that he based his statements on the news
release from the OPD which were published in the Odessa American Ain good faith to inform the readers . .
. about a matter of public interest and concern.@  Midessa Television=s
summary judgment evidence includes affidavits of Jay Hendricks and Enza
Locascio.  Hendricks, news director of
KWES, stated:

KWES
and I personally rely on police department press release[s] on a regular
basis.  We routinely rely on press
releases as a source and rarely, if ever, has a police department press release
been inaccurate.  The [n]ews [r]elease
was a very credible source, and I still believe that to be true today.

 

Locascio, a producer at KWES, stated that, A[i]n the Broadcast, I reported on the
exact information contained in the [n]ews [r]elease. . . . I believed the
Broadcast accurately reflected, and it did accurate[ly] reflect, the
information released by the Odessa Police Department about [Sotelo].@ 
Having negated actual malice, the burden shifts to Sotelo to raise a
fact issue.

Sotelo=s
controverting summary judgment evidence includes affidavits of Sotelo and of
Robert Watson, a private citizen living in Midland County, Texas.  The crux of Sotelo=s
response to the motions for summary judgment was that (1) an average citizen
would have understood Sotelo to be a sex offender after reading the article or
seeing or hearing the broadcasts and (2) defendants could have easily checked
whether Sotelo was a sex offender using the Texas Department of Public Safety=s Database, a link to which is provided
on Midessa Television=s
own website.  After reviewing the summary
judgment evidence, we find that Sotelo has not raised a material fact issue
regarding actual malice.

Because the broadcasts and article concerning
Sotelo were privileged and actual malice was negated, we reverse the summary
judgment orders and render judgment that Sotelo take nothing.  We need not address other theories raised by
the media defendants.  Pursuant to
Section 51.015 of the Civil Practice and Remedies Code, each party will be
liable for and taxed its own costs of this appeal. Tex. Civ. Prac. & Rem. Code Ann. '
51.015 (Vernon 1997).

The orders of the trial court are reversed, and
judgment is rendered that Sotelo take nothing.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

June 15, 2006

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.











[1]The text of the Odessa American article printed
in the April 30, 2005, issue was as follows:

 

Failure to keep track of registered sex offenders has
contributed to recent tragedies in Florida and elsewhere in the nation, but
area law enforcement officials are in the fifth year of a program that keeps
tabs on sex offenders living in Ector County. 

 

Between 3 p.m. and 11 p.m. Thursday, law enforcement
officers were able to contact 155 registered sex offenders in Ector County. 

 

Of those, most were found to be in compliance. However,
two were arrested and taken to the Ector County Law Enforcement Center. 

 

Joel Jackson, 36, was arrested and charged with
third-degree felony Afailure to comply as sex offender.@ He remained Friday in the Ector County Detention
Center on a $15,000 bond.  

 

Jose Spencer Sotelo, 38, was charged with outstanding
warrants on misdemeanor A theft and misdemeanor B Afalse ID to peace officer.@ He remained Friday in the Ector County Detention
Center on a $1,000 bond.

 

AWe try to do a major operation like this twice a year,@ Deputy Chief Lou Orras said. AWe=ve been doing this for years. But with all that=s going on in Florida, it seems pertinent now.@ 

 

About 45 law enforcement officers spent Thursday
evening trying to track down 178 registered sex offenders in the city and
county.  

 

As of Friday, there were 23 who had not been contacted.


 

AWe=ll be sending detectives out to follow up with those we
haven=t contacted.@ 

 

Of the 23 officers didn=t find
Thursday, there are three officers suspect may have fled the area without
reporting, Orras said. 

 

However, with the others, Orras said they may just have
not been home at the time officers came by. 

 

AJust because they don=t answer
the door, doesn=t mean they=re in
violation _ they could be out shopping,@ he said. AA number
of these offenders are employed during nighttime hours at oilfield leases,
drilling rigs, etc.@ 

 

Detective Cpl. Tommy Davis said police detectives
randomly select five sex offenders a week to check for compliance. 

 

 

FOOTNOTE NO. 1 CONTINUED:

AWe let these guys know, I=m just
doing my job to make sure they=re in compliance,@ he said.
AIf they=re in compliance, it keeps them out of trouble. Some of
these guys just want to get this over with and get on with their lives, but
they have this cloud over their heads.@ 

 

But a couple of times a year, a cooperative of law
enforcement _ including the police department, sheriff=s office, county attorney=s
prosecutors and investigators, a district attorney=s prosecutor, the Texas Alcoholic Beverage Commission,
Ector County adult probation and parole, Texas Department of Public Safety
troopers and special crimes detectives, as well as CrimeStoppers  _ band together for the one-day check of all offenders
in the county. 

 

AThis is a lot of work,@ Orras
said.  ABut by
evidence today, we couldn=t do this operation by ourselves. There=re just too many. The sheriff=s office couldn=t do it.
It just allows us to pool our resources for a common goal.@ 

 

And that works out well for the community, he said. 

 

AI believe
it=s for the protection of the community,@ Orras said. AThe
recidivism rate for sex offenders is high, as everyone knows. The message we
want to send is that we want them to follow the law, and we=ll do our part to make sure they do so by letting them
know that we periodically and randomly verify that they=re where they=re
supposed to be@ (emphasis added).





[2]A broadcast read from a script is
considered libel and not slander. Christy v. Stauffer Publ=ns, Inc., 437 S.W.2d 814, 815 (Tex. 1969).