# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00563-CV

**Mark Gustafson and CPR Resources, Inc., Appellants**

**v.**

**City of Austin and Remedios P. Morris, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. GN003356, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## O P I N I O N

Mark Gustafson and CPR Resources, Inc. ("Gustafson") sued the City of Austin and Remedios Morris for libel, slander, defamation per se, business disparagement, and tortious interference with contract. Gustafson, the City of Austin, and Morris all filed cross motions for summary judgment and partial summary judgment. The trial court granted the City of Austin's and Morris's motions and denied Gustafson's motions. By six issues on appeal, Gustafson argues that the trial court erred in finding that: (1) the City of Austin enjoyed sovereign immunity; (2) Morris enjoyed official immunity; (3) Gustafson's case was barred because there was a lack of notice; (4) Morris was not liable for defamation because the statement(s) were true or substantially true; (5) Morris was not liable because the actions complained of were protected by qualified privilege; and in (6) overruling Gustafson's objections to several of Morris's affidavits. Because we conclude that

the statements made by Morris were substantially true as a matter of law, we will affirm the judgment of the trial court.

## FACTUAL BACKGROUND

Mark Gustafson is an officer and owner of CPR Resources, Inc. As part of his job, Gustafson teaches people how to perform cardiopulmonary resuscitation (CPR) and other medical procedures. In order to teach CPR classes that are sanctioned by the American Heart Association (AHA), one either has to be recognized as a Community Training Center or be affiliated with an established Community Training Center. Community Training Centers schedule and conduct AHA courses and have the authority to issue AHA course-completion cards to people who completed the CPR course.

In July 1998, Joe Street, a regional consultant for the AHA, informed Gustafson that his company's application to become a Community Training Center had been denied. Because Gustafson and CPR Resources, Inc. did not qualify as a Community Training Center, Gustafson could not teach CPR classes that were sanctioned by the AHA unless he affiliated with a recognized Community Training Center. Although he could still teach CPR classes if he was not affiliated with a Community Training Center, the classes would not be sanctioned by the AHA.

After receiving the letter from Street, Gustafson associated with CPR Trainers & Services, a Community Training Center operated by Glenice Ford. As a result of his affiliation with Ford's Community Training Center, Gustafson was able to teach CPR courses that were AHA certified. The City of Austin-Emergency Medical Services is also a Community Training Center, providing instructors who teach CPR classes to the public. Gustafson is not affiliated with the City

2

of Austin's Community Training Center. However, his company has taught CPR classes to City of Austin Fire Department trainees in the past.

From 1995 to November 2001, Remedios Morris worked for the City of Austin Emergency Medical Services as the CPR coordinator. As part of her job, Morris organized CPR classes for the public and for Emergency Medical Service employees. Additionally, she was in charge of the certified CPR instructors who taught classes through the City of Austin and was in charge of the City of Austin's CPR training program. Part of Morris's job was to notify the AHA of any student complaints about the classes or if any other problems related to the classes occurred.

Over the years, the AHA has received several complaints about Gustafson violating its procedures and policies. The complaints included the following: (1) using personally produced teaching material rather than the approved AHA text; (2) using a curriculum that did not follow the AHA guidelines; (3) issuing AHA and non-AHA course completion cards for the same class; (4) giving students blank course-completion cards; (5) violating the guidelines describing the correct student-to-teacher ratio for CPR classes; and (6) refusing to notify his Community Training Center coordinator of the time of his upcoming classes so the classes could be monitored.

On September 13, 1999, Jan Gipson, a regional consultant for the AHA, wrote Gustafson a cease-and-desist letter containing the following text:

> Because you are not an authorized Community Training Center or Training Site, you are not authorized to use the American Heart Association's name or servicemarks in any way, issue American Heart Association course cards, or hold yourself out as a participant in the association's ECC training program . . . . Therefore, the American Heart Association hereby demands that you immediately cease and desist from (1) any distribution of cards bearing the American Heart Association's name or servicemarks; (2) directly or indirectly holding yourself out as authorized to issue

3

American Heart Association cards or train under the association's ECC Training Program; and (3) stating, suggesting, or implying that you are affiliated, endorsed, or sponsored by the association.[1]

Between September and November 1999, there were several communications between Gipson and Ford about Gustafson. Gipson informed Ford that there had been complaints about the way that Gustafson was teaching his CPR courses and there had been problems with the cards Gustafson had been passing out. Gipson told Ford that Gustafson had passed out two different course-completion cards during the same class and that the writing on some of the cards was illegible. Gipson warned Ford that she needed to disassociate herself from Gustafson or else the AHA would have to take corrective action against Ford's Community Training Center. After her discussions with Gipson, Ford decided to end Gustafson's association with her center and wrote Gustafson a letter on November 16, 1999, terminating his position as an instructor for her Community Training Center.

After talking with Gipson, Morris learned that the AHA had sent the September 13, 1999 letter to Gustafson asking him to cease using the AHA servicemark and to not hold himself out as affiliated or associated with the AHA. Morris also learned that Gustafson was no longer affiliated with Ford's Community Training Center. On November 18, 1999, Morris sent an e-mail to six Emergency Medical Service employees, including David Gruell, stating the following:

---

[1] Gustafson argues that Gipson acknowledged the September 13 letter was a mistake but does not indicate where in the record Gipson makes this admission. Our review of the record revealed nothing to support this contention.

As of November 18, 1999 Mark Gustafson is no longer a valid American Heart Association (AHA) CPR instructor. His instructor status with AHA as [sic] been officially revoked by the AHA. He can still teach CPR, just not under the AHA name or give out AHA cards.

Gustafson learned of the e-mail in November 1999 when David Gruell asked him if the statements in the e-mail were true. Gustafson denied that the statements were true. After learning of the e-mail, Gustafson sued Morris and the City of Austin.

## DISCUSSION

The standard for reviewing a motion for summary judgment is well established: (i) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law; (ii) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (iii) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985)*; Basic Capital Mgmt. v. Dow Jones & Co.*, 96 S.W.3d 475, 480 (Tex. App.—Austin 2002, no pet.). When both parties have moved for summary judgment and the trial court denies one motion and grants the other motion, "we review the summary judgment evidence presented by both sides and determine all questions presented." *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). We then render the judgment the trial court "should have rendered." *Id.* Because the motion for summary judgment raised multiple grounds and the trial court does not specify which ground it relied on, we may affirm if any of the grounds are meritorious. *Hanson v.*

5

*Republic Ins. Co.*, 5 S.W.3d 324, 327 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (citing *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996)).

In his fourth issue, Gustafson alleges the trial court erred in granting summary judgment in favor of Morris and the City of Austin on the ground that the statements in Morris's e-mail were true or substantially true. To prevail on a defamation claim, the plaintiff must prove that the defendant published a statement that was defamatory about the plaintiff, while acting with actual malice if the plaintiff was a public official or public figure, or with negligence if the plaintiff was a private individual, about the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *Basic Capital Mgmt.*, 96 S.W.3d at 480. A written statement is defamatory if it exposes a person to public contempt or financial injury, or if it impeaches a person's reputation. *Basic Capital Mgmt.,* 96 S.W.3d at 480; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 1997). The truth of a statement is a defense to a claim for defamation. *See Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987); *Basic Capital Mgmt.,* 96 S.W.3d at 480. The defense of truth does not require proof that the alleged defamatory statement is literally true in every detail; substantial truth is sufficient. *Howell v. Hecht*, 821 S.W.2d 627, 632 (Tex. App.—Dallas 1991, writ denied). Therefore, if Morris and the City of Austin establish the substantial truth of the statement as a matter of law, they are entitled to summary judgment. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15 (Tex. 1990); *Basic Capital Mgmt.*, 96 S.W.3d at 481.

The substantial-truth test stems from the freedom of speech and freedom of press protections of the First Amendment. *Basic Capital Mgmt.*, 96 S.W.3d at 481 (citing *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 512-17 (1991)). Under the substantial-truth test, the truth of

6

the statement in the publication on which an action for libel is based is a defense to the action. *McIlvain*, 794 S.W.2d at 15; *Basic Capital Mgmt.*, 96 S.W.3d at 481; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 73.005 (West 1997). A statement is substantially true, and thus not actionable, if its "gist" or "sting" is not substantially worse than the literal truth. *McIlvain*, 794 S.W.2d at 16; *Basic Capital Mgmt.*, 96 S.W.3d at 481; *Dolcefino v. Randolph*, 19 S.W.3d 906, 921 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). This evaluation requires us to determine whether, in the mind of the average person who read the statement, the allegedly defamatory statement was more damaging to the plaintiff's reputation than a truthful statement would have been. *McIlvain*, 794 S.W.2d at 16; *Basic Capital Mgmt.*, 96 S.W.3d at 481; *Dolcefino*, 19 S.W.3d at 921. When the underlying facts as to the gist of the libelous charge are undisputed, we disregard any variance regarding items of secondary importance and determine substantial truth as a matter of law. *McIlvain*, 794 S.W.2d at 16; *Basic Capital Mgmt.*, 96 S.W.3d at 481.

We first examine whether Morris's e-mail is true or substantially true. Gustafson argues that the following two statements from Morris's e-mail are untrue: (1) "[a]s of November 18, 1999 Mark Gustafson is no longer a valid American Heart Association (AHA) CPR instructor" and (2) "[h]is instructor status has been officially revoked by the AHA." In her e-mail, Morris also wrote "Gustafson may still teach CPR classes but he could not hand out AHA certification cards."

In determining whether a statement is true or substantially true, we must look at the statement in light of the surrounding circumstances. *Dolcefino*, 19 S.W.3d at 917. At the time Morris wrote her e-mail, she was working as a CPR coordinator for the City of Austin. Morris had received some complaints about the CPR classes taught by Gustafson and had discussed those

7

complaints with representatives from the AHA. In conversations between Morris and Gipson around the time Morris wrote her e-mail, Gipson informed Morris that the AHA had sent a letter to Gustafson telling him to stop using the AHA's servicemark, to stop issuing AHA course-completion cards, and to no longer hold himself out as being affiliated with the AHA. Gipson also informed Morris that Gustafson was no longer affiliated with CPR Trainers and Services, the Community Training Center owned by Ford. After these discussions with Gipson, Morris wrote the allegedly defamatory e-mail to six of her co-workers informing them about what she believed was Gustafson's status as a CPR instructor.

Gustafson was no longer affiliated with a Community Training Center and did not qualify as a Community Training Center on his own at the time the e-mail was written. As a result, the courses Gustafson taught would not be sanctioned by the AHA and therefore would not be valid AHA courses.[2] Because Gustafson could not teach classes that would be sanctioned by the AHA until he affiliated with a valid Community Training Center program, he did not qualify as a valid AHA CPR instructor in terms of AHA certification when the allegedly defamatory statements were written.[3] Therefore, the statement "Gustafson is no longer a valid American Heart Association (AHA) CPR instructor" was true when Morris e-mailed it to her colleagues.

---

[2] In Janis Gipson's affidavit, she stated that at the time the e-mail was written Gustafson could not teach classes that were AHA certified unless he affiliated with another Community Training Center or re-affiliated with his previous Community Training Center.

[3] At oral argument, Gustafson conceded that at the time the e-mail was written, he was not affiliated with a Community Training Center and, as a result, could not hand out AHA completion cards.

8

The gist of Morris's e-mail is that Gustafson cannot teach CPR classes that are AHA approved. The undisputed underlying facts at the time Morris's e-mail was written were that Gustafson was not affiliated with a Community Training Center and, as a result, could not teach CPR courses that were sanctioned by the AHA. Further, Gipson told Morris that she sent Gustafson a letter telling him to cease using the AHA servicemark and not to hold himself out as being affiliated with, or certified by AHA, implying his status had been revoked. The disagreement over whether the AHA *officially* revoked his instructor status is of "secondary importance" because the gist of the e-mail is not substantially worse than the literal truth.[4] *McIlvain*, 794 S.W.2d at 16.

The allegedly defamatory statements that "Gustafson is no longer a valid American Heart Association (AHA) CPR instructor" and "[h]is instructor status with AHA has been officially revoked by the AHA" would have been no more damaging to Gustafson's reputation in the mind of the average reader than the following truthful statements:

> Gustafson is no longer a valid American Heart Association CPR instructor. While he can still teach CPR courses, the courses are not AHA sanctioned.

It is the AHA certification that students taking CPR classes desire. Both statements declare that Gustafson could not confer AHA certification. Because the gist of Morris's statements is not worse than the literal truth, the statements are substantially true as a matter of law. *Id.*

---

[4] Also, a February 2, 2000 letter from Kevin Sheeran, one of the directors of the Emergency Cardiovascular Care program at the AHA, to Gustafson stated, "I agreed to look into the process by which your position as an American Heart Association instructor under your CTC . . . was *terminated*," implying that Gustafson's status as an AHA instructor was, indeed, revoked. (Emphasis added.)

9

## CONCLUSION

We hold that the statements in Morris's November 18, 1999 e-mail are substantially true as a matter of law. Because we affirm the trial court's grant of summary judgment for Morris and City of Austin on the grounds that the statements were true or substantially true, we need not address the other issues raised on appeal. The judgment of the trial court is affirmed.

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   June 26, 2003