Opinion issued September 10, 2009



 
 








 




In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00373-CV

____________


TOM PEDEN AND PAULA PEDEN, Appellants


V.


STEPHEN POHL, FRED W. LAWTON, SOUTH TEXAS SURVEYING
ASSOCIATES, INC., GUARANTEE TITLE & TRUST COMPANY D/B/A
TEXAS GULF TITLE, Appellees






On Appeal from the 80th District Court

Harris County, Texas

Trial Court Cause No. 2006-02891






MEMORANDUM OPINION

 Appellants, Tom and Paula Peden, appeal the trial court's rendering of
summary judgment in favor of appellees South Texas Surveying Associates, Inc.
("South Texas"), Fred W. Lawton, Stephen Pohl, and the Guarantee Title & Trust
Company d/b/a Texas Gulf Title ("Gulf Title"). The Pedens brought suit against
South Texas and Lawton for erroneously identifying an easement as a "utility
easement," rather than a "right-of-way easement" on a survey. The Pedens also sued
Gulf Title for fraud and negligence in its preparation of title insurance commitments
and for its hiring of South Texas and Lawton. The Pedens additionally sued Pohl for
defamation based on comments Pohl made concerning the Pedens' building permit
application. In their first issue, the Pedens contend the trial court erred by rendering
summary judgment in favor of South Texas and Lawton because the Pedens are not
estopped by the position they took in earlier litigation against the City of West
University Place concerning the easement. In their second issue, the Pedens contend
the trial court erred by granting Pohl's motion for summary judgment because a fact
issue remains concerning whether Pohl's statement was true or substantially true. In
their third issue, the Pedens contend the trial court erred by granting summary
judgment in favor of Gulf Title because a fact issue exists concerning whether
limitations was tolled by the discovery rule and because the Pedens provided more
than a scintilla of evidence on each element of their claims against Gulf Title. We
affirm the summary judgment in favor of Pohl because no fact issue exists concerning
the truth or substantial truth of Pohl's statement. However, we reverse and remand
the claims against South Texas and Lawton because the Pedens are not estopped from
asserting their claims against them. We also reverse the judgment in favor of Gulf
Title and remand with instructions to the trial court that the Pedens' claims against
Gulf Title be dismissed.

Background In July 2000, the Pedens, mortgage brokers with experience in the real estate
industry, purchased a lot in the City of West University Place. The Pedens intended
to tear down the existing house and build a new one on the lot. The Pedens hired
Gulf Title to procure title insurance and to close escrow on the property. 

 Gulf Title's original title commitment mentioned "an easement for right-of-way
purposes 2.5 feet along the entire extreme west property line" and referenced the deed
that granted the easement. Gulf Title hired South Texas to prepare a survey of the
property. Lawton was the South Texas employee who performed the survey. The
survey identified the easement as a utility easement, but referenced the same deed
granting the easement that Gulf Title's title commitment referenced. Whether the
easement was a utility easement or a right-of-way affected the size of the house the
Pedens could build, as well as the "set back" requirements of the location of the house
on the property. Gulf Title approved the survey and submitted it to the Pedens at
closing. Gulf Title issued a title policy that referred to both a utility easement and a
right-of-way easement.

 The Pedens began working with an architect to design a home that maximized
square footage but also complied with the City's zoning ordinances. The Pedens used
the South Texas survey that identified the easement as a utility easement and not a
right-of-way. The Pedens applied for a building permit in April 2004. Included with
their application for a building permit was a site plan that identified the easement as
a utility easement.

 City officials, including the Chief Building Officer Dennis Mack, met with the
Pedens and their home designer to verify the plans met the City's zoning ordinances. 
Mack approved the application and the City issued a building permit after the Pedens'
designer specified on the plans that the attic ceiling would be lower than seven feet.

The size of the attic was pertinent because the City's ordinances require that an attic
have a ceiling less than seven feet in height. Furthermore, attic space does not count
against the square footage limits for the house. 

 Shortly after the Pedens began construction, Mack received a complaint from
Pohl, who wanted Mack and other City officials to revoke the Pedens' permit. Pohl
previously served as the Chairman of the City's Zoning and Planning Commission. 
Pohl knew of the 2.5 foot easement that he believed was a right-of-way easement that
violated City ordinances. On February 25, 2005, the City issued a formal decision
suspending the building permit. In the decision, the City stated that the Pedens knew
of the right-of-way easement, that the Pedens asserted the easement had reverted to
the property owner, and that Gulf Title had assured them that the easement was no
longer valid. Mack acknowledged that he signed the City's decision, but he claimed
he had no personal knowledge of the facts recited in the decision because the City
Attorney was the person who wrote the decision.

 A few days later, Pohl again complained to City officials that the floor
designated as an attic exceeded the size requirements for attics, and that Mack had
allowed the violation. The City asked Mack to resign, retire, or face being fired over
the attic dispute. On March 3, 2005, the City issued another formal decision
suspending the building permit until the Pedens demonstrated to the City that the attic
complied with zoning requirements. This decision was also drafted by the City
Attorney and signed by Mack. The Pedens met with Mack, providing him with
additional proof that the attic met zoning requirements. Mack, however, did not lift
the suspension because he felt pressured by the City Attorney. Mack also feared that
if he were fired he would lose his retirement benefits.

 After the second suspension, Pohl was interviewed by a local television news
station concerning the dispute. On March 30, 2005, the television station broadcasted
a story concerning the dispute, which included the statement by Pohl, "A number of
embellishments and liberties were taken with the application process in order to
permit the house." 

 As part of the ongoing dispute, the Pedens filed suit against the City. In that
suit, the Pedens prevailed on their claim that the right-of-way easement did not
burden the property and therefore did not reduce the square footage allowed for the
Pedens' house. The court, however, also upheld the City's decision to suspend
construction because the space the Pedens designated as an attic space exceeded the
size allowed for an attic in violation of City ordinances. The Pedens appealed, but
reached a settlement with the City. The Pedens and the City filed a joint motion for
this Court to reverse and render judgment to effectuate the settlement agreement. 
This Court did so. See Peden v. City of W. Univ. Place, No. 01-07-00576-CV, 2008
WL 659480, at *1 (Tex. App.--Houston [1st Dist.] Mar. 13, 2008, no pet.).

Standard of Review

 We review summary judgments de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). When a summary judgment does not specify the
grounds on which it was granted, we will affirm the judgment if any one of the
theories advanced in the motion is meritorious. Joe v. Two Thirty Nine Joint Venture,
145 S.W.3d 150, 157 (Tex. 2004).

 Summary judgment under rule 166a(c) is proper only when the movant
establishes that there is no genuine issue of material fact and that the movant is
entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). In reviewing a 
summary judgment under rule 166a(c), we must indulge every reasonable inference
in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and
resolve any doubts in favor of the nonmovant. Valence, 164 S.W.3d at 661. A
defendant who moves for summary judgment on the plaintiff's claim under rule
166a(c) must conclusively disprove at least one element of the plaintiff's cause of
action. Little v. Tex. Dep't of Criminal Justice, 148 S.W.3d 374, 381 (Tex. 2004). 

Summary Judgment for South Texas and Lawton

 In their first issue, the Pedens contend the trial court erred by rendering
summary judgment for South Texas and Lawton. 

 A. Estoppel

 South Texas and Lawton moved for summary judgment on the grounds of
collateral estoppel, judicial estoppel, and quasi-estoppel. Specifically, South Texas
and Lawton contend the Pedens, in their earlier lawsuit against the City, took the
unequivocal position that the right-of-way-easement did not burden their property
because it had reverted in 1949. South Texas and Lawton contend the Pedens are
estopped from bringing an action against them based on the allegation that they failed
to disclose an easement. The Pedens respond that (1) the prior judgment cannot have
a preclusive affect on the instant suit because the judgment was vacated and replaced
with an agreed judgment and (2) their damages in this case were caused by the failure
of South Texas and Lawton to properly survey the property and identify the easement,
regardless of whether the easement reverted in 1949, as alleged in the Pedens' prior
suit.

 1. Collateral Estoppel

 The elements of collateral estoppel are: (1) the facts sought to be litigated in
the second action were fully and fairly litigated in the first action, (2) those facts were
essential to the judgment in the first action, and (3) the parties were cast as
adversaries in the first action. Case Funding Network, L.P. v. Anglo-Dutch Petroleum
Int'l, Inc., 264 S.W.3d 38, 52 (Tex. App.--Houston [1st Dist.] 2007, pet. denied)
(citing Tex. Dep't of Pub. Safety v. Petta, 44 S.W.3d 575, 579 (Tex. 2001)). It is
undisputed that the Pedens were not "cast as adversaries" against South Texas and
Lawton in the earlier suit. Therefore, collateral estoppel does not apply. The trial
court erred if it granted summary judgment on this ground. 

 2. Judicial Estoppel

 Judicial estoppel generally prevents a party who has succeeded in maintaining
a certain position in a proceeding from assuming a contrary position "simply because
his interests have changed." New Hampshire v. Maine, 532 U.S. 742, 749, 121 S. Ct.
1808, 1814 (2001) (quoting Davis v. Wakelee, 156 U.S. 680, 689, 15 S. Ct. 555
(1895)). The purpose of judicial estoppel is "to protect the integrity of the judicial
process." Id., 121 S. Ct. at 1814. Judicial estoppel is an equitable doctrine, and as
such, all the circumstances of the case may be relevant. See id. at 750, 121 S. Ct. at
1815. The factors that "typically inform the decision whether to apply the doctrine"
are: (1) a party's position must be "clearly inconsistent" with its earlier positions, (2)
whether the parties urging of inconsistent positions threatens judicial integrity by
creating a "risk of inconsistent court determinations," and (3) whether the party
seeking to assert an inconsistent position would gain an unfair advantage or impose
an unfair detriment on the opposing party. Id. at 750-51, 121 S. Ct. at 1815.

 Judicial estoppel does not apply to the Pedens in this case. First, the Pedens'
position in this lawsuit is not "clearly inconsistent" with their earlier position. In the
earlier suit against the City, the Pedens contended that the right-of-way easement,
granted in a 1948 deed, had reverted in 1949 under the terms of the deed. Essentially,
South Texas and Lawton contend that because the Pedens successfully maintained
that the easement did not exist, it is not equitable to allow the Pedens to seek damages
for "failing to disclose an existing right of way easement." However, the Pedens' live
petition in this case demonstrates that their position is not that South Texas and
Lawton failed to disclose an existing right-of-way easement, but that South Texas and
Lawton negligently identified the easement as a utility easement, which would affect
whether the plans complied with City ordinances. The Pedens assert that if the
easement had been properly identified, they could have avoided the suspension of
their building permits and the ensuing litigation and avoided incurring hundreds of
thousands of dollars in legal fees. Because the Pedens' positions in the two
proceedings are not "clearly inconsistent," this factor weighs against applying judicial
estoppel. See New Hampshire, 532 U.S. at 750-51, 121 S. Ct. at 1815. 

 The second factor also weighs against applying judicial estoppel. In the suit
against the City, the trial court declared that the easement did not encumber the
Pedens' property. In the instant action, if the Pedens prevail, the trial court will find
that South Texas and Lawton were negligent in preparing a survey. The two
judgments are not inconsistent. See id. The final factor also weighs against applying
the doctrine of judicial estoppel, because the Pedens are not gaining an unfair
advantage over or imposing an unfair detriment on South Texas or Lawton. See id. 
In considering the three factors, the reasons for applying the doctrine are not present
in this case. We therefore hold the Pedens are not judicially estopped from bringing
their claims against South Texas and Lawton.


 3. Quasi-Estoppel

 "Quasi-estoppel precludes a party from asserting, to another's disadvantage,
a right inconsistent with a position previously taken." Lopez v. Munoz, Hockema &
Reed, L.L.P., 22 S.W.3d 857, 864 (Tex. 2000) "The doctrine applies when it would
be unconscionable to allow a person to maintain a position inconsistent with one to
which he acquiesced, or from which he accepted a benefit." Id.

 Quasi-estoppel does not apply to the Pedens in this case because, as explained
in more detail under the section concerning judicial estoppel, the Pedens' position in
this lawsuit is not "clearly inconsistent" with their earlier position. Moreover, in the
suit against the City the trial court declared that the easement did not encumber the
Pedens' property, as compared to the instant action that asks the court to determine
that South Texas and Lawton were negligent in preparing a survey. We conclude that
it is not unconscionable to allow the Pedens to adopt their position in the instant suit. 
Therefore, quasi-estoppel does not apply. 

 B. Proximate Cause

 In their appellees' brief, South Texas and Lawton also contend that they are
entitled to summary judgment on the element of proximate cause, stating the 
evidence "conclusively negated both foreseeability and cause-in-fact." This ground
for summary judgment was not raised in the motion for summary judgment filed
jointly by South Texas and Lawton.

 A movant's "motion for summary judgment shall state the specific grounds
therefor." Tex. R. App. P. 166a(c). The motion "must itself expressly present the
grounds upon which it is made, and must stand or fall on these grounds alone." Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 912 (Tex. 1997) (citing McConnell v.
Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993)). Here, South Texas
and Lawton filed a "Plea of Collateral Estoppel and Motion for Summary Judgment." 
In the summary of the argument, South Texas and Lawton assert that the Pedens
obtained a judgment that the right-of-way easement no longer existed on their
property because it reverted in 1949, and "[a]s a result of this estoppel any
representation by South Texas regarding the absence of a right-of-way could not
proximately cause the Pedens' damages as a matter of law." Within the "Authority"
section of their motion for summary judgment, South Texas and Lawton had four sub-headings--one for the summary judgment standard and then three entitled "Collateral
Estoppel," "Judicial Estoppel," and "Quasi Estoppel." South Texas and Lawton did
not list "Proximate Cause" nor did they cite any legal authority concerning proximate
cause. In the argument section of the motion, the fourth subheading states, "South
Texas's Representations Did Not Proximately Cause the Peden's Damages." In its
entirety, the subsection states, 

 An essential element of both negligence and negligent misrepresentation
is proximate cause. In this case, the Pedens allege that South Texas
"misrepresented" the character of the easement as a utility easement
when in fact it was a right-of-way. However, as determined by the
127th [District Court], the easement [w]as not a right-of-way, and the
Pedens['] lot was in fact 50' wide. [South Texas] therefore did not make
a misrepresentation that proximately caused damages. 


 We conclude the motion did not raise proximate cause as a ground for summary
judgment because the only grounds expressly presented were collateral estoppel,
judicial estoppel, and quasi-estoppel. See Tex. R. App. P. 166a(c); Sci. Spectrum, 941
S.W.2d at 912. 

 We sustain the Pedens' first issue.

Summary Judgment for Pohl

 In their second issue, the Pedens assert that summary judgment was improper
because a fact issue exists regarding their claim for defamation against Pohl. The
statement the Pedens contend is defamatory occurred during a television interview
concerning the zoning controversy with the Pedens' home, when Pohl remarked, "A
number of embellishments and liberties were taken with this application process in
order to permit the house."

 A. Law Concerning Defamation

 The elements of the Pedens' defamation claim are that: (1) Pohl published a
statement, (2) the statement was defamatory concerning the Pedens, and (3) Pohl
acted with negligence regarding the truth of the statement. See WFAA-TV, Inc. v.
McLemore, 978 S.W.2d 568, 571 (Tex. 1998). A statement is defamatory if the words
tend to injure a person's reputation, exposing the person to public hatred, contempt,
ridicule, or financial injury. Colson v. Grohman, 24 S.W.3d 414, 421 (Tex.
App.--Houston [1st Dist.] 2000, pet. denied). 

 Truth is an affirmative defense to a claim for defamation. See Associated Press
v. Cook, 17 S.W.3d 447, 452 (Tex. App.--Houston [1st Dist.] 2000, no pet.). 
Similarly, a showing of substantial truth in a summary judgment case will defeat a
defamation claim. McIlvain v. Jacobs, 794 S.W.2d 14, 15-16 (Tex. 1990). To
determine substantial truth, we consider whether the defamatory statement was more
damaging to the plaintiff in the mind of the average reader than a true statement
would have been. McIlvain, 794 S.W.2d at 16; Barbouti v. Hearst Corp., 927 S.W.2d
37, 65 (Tex. App.--Houston [1st Dist.] 1996, writ denied). This evaluation involves
looking at the "gist" of the statement. McIlvain, 794 S.W.2d at 16; KTRK Television
v. Felder, 950 S.W.2d 100, 105 (Tex. App.--Houston [14th Dist.] 1997, no writ). If
the underlying facts as to the gist of the libelous charge are undisputed, then we can
disregard any variance with respect to items of secondary importance and determine
substantial truth as a matter of law. McIlvain, 794 S.W.2d at 16; KTRK Television,
950 S.W.2d at 105-06. 

 As stated previously, the truth of a statement is an absolute defense to a claim
for defamation. See Hurlbut v. Gulf Atl. Life Ins. Co., 749 S.W.2d 762, 766 (Tex.
1987). The defense of truth does not require proof that the alleged defamatory
statement is literally true in every detail; substantial truth is sufficient. Howell v.
Hecht, 821 S.W.2d 627, 631-32 (Tex. App.--Dallas 1991, writ denied). If Pohl 
established, as a matter of law, the substantial truth of the statements about which the
Pedens complain, he is entitled to summary judgment. McIlvain, 794 S.W.2d at 15;
Gustafson v. City of Austin, 110 S.W.3d 652, 656 (Tex. App.--Austin 2003, pet.
denied). 

 B. Summary Judgment Motion, Response, and Evidence

 Pohl moved for summary judgment on the basis of the affirmative defense of
truth or substantial truth. Specifically, Pohl contended that his statement is supported
by the City's orders suspending the Pedens' building permit. Pohl also asserted that
the final judgment in the 127th District Court found the space designated as an "attic"
was not an attic. Therefore, Pohl argues, "embellishments and liberties" had to have
been made in the application. As evidence in support of his summary judgment
motion, Pohl provided copies of the City's orders suspending the Pedens' building
permit, his affidavit, and the judgment from the 127th District Court.

 The City's February 25, 2005 order states, in pertinent part, "During the
investigation, staff contacted the construction contractor and the owner, who admitted
that they knew about the easement, but they asserted that the easement had reverted
to the property owner." The City's March 3, 2005 order states, that "[City officials]
observed a large area on the third floor shown on the plans as an attic. That area is
not being constructed as an attic." Further, the order states, "As the third floor is
being constructed, it violates [City ordinances]." In his affidavit, Pohl averred that
his "statement regarding liberties and embellishments . . . was made, and aired,
following the suspension of the Pedens' construction permit . . . ." 

 The judgment from the 127th District Court provides, 

 [T]he area designated on the excerpt from the plans (Exhibit "7") as an
"attic" is not an attic, so that the square footage of that space must be
included in the total square footage of the structure. With that additional
square footage, the structure violates the "framed area ratio"
requirements in the City's Zoning Ordinances.

 

 In their response to the motion for summary judgment, the Pedens contended
that the "import" of Pohl's statement is that "the Pedens engaged in misleading
conduct or that they falsified documents relating to the application for a building
permit." To refute the truth of Pohl's allegedly defamatory statement, the Pedens
submitted their own affidavits as well as an affidavit from Mack. In their affidavits,
the Pedens stated they did not know of the right-of-way issue until informed of it in
February 2005. They both also averred that they did not "make any embellishments
and/or take any liberties with the application process in order to receive a permit to
build the house."

 In his affidavit, Mack stated, 

 I determined that the attic was being built consistently with the plans
and City ordinances, that the Pedens did not make any embellishments
or take any liberties with their application as it related to the attic, and
that the suspension [of the Pedens' permit based on the attic issue]
should have been lifted on March 4, 2005, the day after I issued it.


Mack also averred,

 Concerning the suspension based on the right-of-way easement, "I never
told any person that I believed the Pedens had taken any 'liberties' or
made any 'embellishments' with the application process. I would not
have made those statements because they are not true, and they wrongly
suggest that the Pedens engaged in misleading conduct or that they
falsified documents."


Finally, Mack also stated that after Pohl complained at a public city council meeting
that Mack had allowed the Pedens to construct the attic space in violation of zoning 
ordinances, the City Manager and Director of Public Works told Mack that he had 90
days to either resign, retire, or be terminated over the attic issue. 

 C. Analysis of Substantial Truth

 Pohl contends he was entitled to summary judgment on the ground of
"substantial truth." In order to determine substantial truth, we must determine the gist
of the allegedly defamatory statement. Here, Pohl stated, "A number of
embellishments and liberties were taken with this application process in order to
permit the house." "Embellish," as used in this context, means to "make (a statement
or story) more interesting or entertaining by adding extra details, esp. ones that are
not true." The New Oxford American Dictionary, at 554 (Oxford University
Press 2001). To "take liberties" means to "treat something freely, without strict
faithfulness to the facts or to an original." Id. at 983.

 Pohl did not identify the Pedens as the people that took liberties or made
embellishments on the application; Pohl did not specifically point to anyone or any
entity. At the time Pohl made the statement, the City had issued two formal decisions
stating the Pedens' building plans did not comply with City ordinances. Also, Mack
was accused of and asked to retire over his allowing a permit on the Pedens' house. 
In light of the City's decisions that the house did not comply with their ordinances
and the criticism of Mack's decision to permit the house, Pohl's statement that "[a]
number of embellishments and liberties were taken with this application process in
order to permit the house" is substantially true. Moreover, Pohl's statement is not
more harmful to the Pedens than a true statement concerning the City's formal
decisions and Mack's reprimand would be. See McIlvain, 794 S.W.2d at 16;
Barbouti, 927 S.W.2d at 65.

 We overrule the Pedens' second issue. 

Summary Judgment for Gulf Title

 While this appeal was pending, Gulf Title was placed into court-ordered
rehabilitation in Ohio due to its financial condition. A receiver was appointed and
the Ohio court later ordered the receiver to liquidate Gulf Title. Pursuant to Ohio
law, the Ohio court issued an order enjoining all persons from instituting or
maintaining any claim against Gulf Title. Under the Texas Insurance Code, "The
statutory provisions of another state and all orders entered by courts of competent
jurisdiction in relation to the appointment of a domiciliary receiver of an insurer and
any related proceedings in another state must be given full faith and credit in this
state." Tex. Ins. Code Ann. § 443.402(a) (Vernon 2009). The Ohio injunction
against suits in other states that may interfere with the receivership process is entitled
to full faith and credit in Texas. Bard v. Charles R. Myers Ins. Agency, Inc., 839
S.W.2d 791, 795 (Tex. 1992). 

 The Pedens agree that the Ohio order enjoins them from maintaining this
appeal against Gulf Title. As stated in the Pedens' brief concerning the Gulf Title
liquidation, "the Pedens ask this Court to remand the claim to the district court so
they will have the option of proceeding with their claim in the Ohio liquidation
proceeding." Gulf Title did not file an appellee's brief in this appeal. Gulf Title filed
a notice that it was in rehabilitation in Ohio and, later, in liquidation. Within the
notice that it was in rehabilitation, Gulf Title requested that this Court "stay" the
Pedens' appeal against Gulf Title "in the same manner as a bankruptcy petition would
stay proceedings under Tex[as] R[ule of] App[ellate Procedure] 8." (1) In response, the
Pedens raise concerns that the summary judgment in favor of Gulf Title might be
given preclusive effect if this Court grants a stay. See J.J. Gregory Gourmet Servs.,
Inc. v. Antone's Imp. Co., 927 S.W.2d 31, 33 (Tex. App.--Houston [1st Dist.] 1995,
no writ) (noting final judgment is given preclusive effect even if appeal is pending)
(citing Scurlock Oil Co. v. Smithwick, 724 S.W.2d 1, 6 (Tex. 1986)). 

 In Bard, a Vermont insurance company was placed in receivership and then in
liquidation. Bard, 839 S.W.2d at 792-93. The Vermont court enjoined any litigation 
against the insurance company and required all claims to be submitted in the Vermont
proceeding. Id. at 793. The liquidator, Bard, sued a Texas resident, Myers, and his
company in Texas, for the recovery of assets allegedly owed to the insurance
company. Id. Myers and his company asserted a compulsory counterclaim. Id. Bard
moved for summary judgment based on the Vermont court's injunction. Id. at 794. 
The Texas Supreme Court determined that Myers's suit should be dismissed because
the Vermont order placing the insurance company in liquidation and enjoining suits
against the company was entitled to full faith and credit. Id. at 797. However, the
supreme court, in order to preserve Myers's rights, reversed the judgment and
remanded the case to the trial court with instructions to dismiss Myers's
counterclaims without prejudice to his rights in Vermont. Id.

 Like Myers, the Pedens are enjoined from pursuing their claims against Gulf
Title pursuant to the Ohio court's order, which is entitled to full faith and credit. 
Therefore, as the supreme court did in Bard, we reverse the summary judgment
against the Pedens and remand this cause to the trial court with orders to dismiss the
Pedens' claims against Gulf Title without prejudice to their rights in Ohio. See id.

Conclusion


 We reverse that portion of the trial court's judgment granting summary
judgment in favor of appellees Fred W. Lawton and South Texas Surveying
Associates, Inc. and remand to the trial court for further proceedings. We affirm that
portion of the trial court's judgment granting summary judgment in favor of appellee
Stephen Pohl. We reverse the judgment against the Pedens and in favor of the
Guarantee Title & Trust Company d/b/a Texas Gulf Title and remand this cause to the
trial court with instructions to dismiss the Pedens' claims against the Guarantee Title
& Trust Company d/b/a Texas Gulf Title without prejudice to the Pedens' rights in
Ohio.



 Elsa Alcala

 Justice

 

Panel consists of Justices Jennings, Alcala, and Higley.

1. See Tex. R. App. P. 8.2 ("A bankruptcy suspends the appeal and all periods in these
rules from the date when the bankruptcy petition is filed until the appellate court
reinstates or severs the appeal in accordance with federal law.").