Opinion issued October 29, 2009


















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-08-00856-CV
__________
 
DAVID RAFES, INC., Appellant
 
V.
 
MICHAEL HUML AND SLOWBOY RACING, INC., Appellees
 

 
 
On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2005-31002
 

 
 
MEMORANDUM OPINION
          Appellant, David Rafes, Inc., challenges the trial court’s judgment entered,
after a bench trial, in favor of appellees, Michael Huml and Slowboy Racing, Inc., in
Rafes’s suit against Huml and Slowboy for defamation and tortious interference with
prospective business relationships. In three issues, Rafes contends that the trial court
erred in not filing findings of fact and conclusions of law, the take-nothing judgment
entered against it is against the great weight and preponderance of the evidence, and
the evidence is legally and factually insufficient to support a finding in favor of Huml
and Slowboy on their “defensive theories.” 
          We affirm. 
Factual and Procedural Background
          In its petition, Rafes, doing business as Turbochargers.com, alleged that, on
February 23, 2005, Huml and Slowboy published defamatory statements in an internet
article regarding Rafes and the quality of a turbocharger produced and sold by Rafes. 
Rafes asserted that, in stating that Rafes’s turbocharger was inferior, the internet
article was defamatory. Rafes challenged, as false or unsubstantiated, Huml and
Slowboy’s claims that Rafes had misled consumers regarding the genuineness of the
turbocharger, Rafes’s turbocharger was a “poorly manufactured turbo from China”
that would “inevitably fail in a short amount of time,” the turbocharger was a
“Chinese version us[ing] an inferior stainless in its composition,” and the
turbocharger was composed of metal, or “some type of powdered metal,” that would
“not hold up to the heat and abuse” typically encountered by turbochargers. Rafes
also asserted that the internet article contained pictures that purported to depict its
turbocharger, but that actually depicted a turbocharger made by another entity. Rafes
complained that Huml and Slowboy implied that scientific testing had been
performed on the turbocharger when in fact no testing had been performed. Noting
that the internet article was published for viewing by the general public, competitor
businesses, and Rafes’s past, present, and future customers, Rafes alleged that Huml
and Slowboy published the defamatory statements with negligence and malice. 
Alleging that the defamatory statements injured Rafes’s reputation and business, it
sought actual damages, past and future lost profits, damages for injury to the business
reputation and goodwill, and exemplary damages.  
          In their answer, Huml and Slowboy asserted multiple affirmative defenses,
including immunity, substantial truth, consent, and qualified privilege. Huml and
Slowboy asserted that Rafes was “libel-proof” and that Rafes’s claims were barred
by its “criminal acts.” Huml and Slowboy also made counterclaims against Rafes for
violations of the Lanham Act.
          On February 19 and 20, 2007, the trial court conducted a bench trial. Rafes
presented the testimony of David Rafes, the owner of Rafes, Thomas Mabrey, an
employee of Rafes, Randall King, an expert witness who evaluated the turbocharger
and the internet article and testified regarding the accuracy of the statements made in
the internet article, and Kenneth Lehrer, an expert who testified regarding Rafes’s
damages. Huml and Slowboy presented the testimony of Huml, president of Slowboy
and author of the internet article, and Andrew Johnston, an expert on turbochargers,
who testified regarding the turbocharger and the statements made in the internet
article.
          At the conclusion of the bench trial, the trial court noted that it was making
“some preliminary findings of fact,” and although it “seemed” that some “inaccurate
statements” were made in the internet article, “other statements [were] true or
arguably true.” The trial court then stated,
          From the plaintiff’s witnesses or witness, we have some
concessions that there was something wrong . . . with the turbocharger,
just not anything that Mr. Huml or that the defendants said was wrong
with it. I heard that statement. That goes not to whether or not the
plaintiff was slandered, but the extent of the defendant’s damages
because this was a bad product for reasons not known to Mr. Huml,
never known to him. But if the product would have failed anyway, that
goes to future damages for sure and to some extent to past damages to
the extent to which warranty claims could have eaten up profits . . . 
 
          At least preliminarily where I am at is there was some accurate
statements made in [the internet article] and some inaccurate statements
made. The extent to which if only the inaccurate statements have been
made would it have still hurt sales and even to the extent to which it did,
the extent to which the plaintiff has been damaged. Those are my
preliminary findings. 
 
          Following some additional discussion, the trial court stated that it had some
unresolved questions about the “law of business disparagement” and the damages
issue. The trial court then noted that the turbocharger “was a bad product that would
have failed anyway but not for any reason [Huml] noted or was aware of.” After
Rafes’s counsel quoted the legal definition of defamation, and contended that the
article had damaged Rafes’s reputation, the trial court explained,
          . . . But the other problems with the turbocharger in question go
to damages. If it was a bad product, your client wouldn’t have made a
lot of money—causation of damages, if your client wouldn’t have made
a lot of money from it anyway because as word got out it was in bad
product if it had—it could have led to—the manufacturing problems that
developed down the line would have cut severely into damages, true?
 
          After Rafes’s counsel disputed whether there was any evidence that the
turbocharger was a “bad product,” the trial court replied, “Well, it is there. Trust me.” 
The court then told the parties that they had the trial court’s “findings” and that it
would “come up with a damage figure” if it found “an award of damages [was]
appropriate.” 
          Both parties filed post-trial briefs regarding their claims, counterclaims, and
affirmative defenses and their proposed judgments, findings of fact, and conclusions
of law. In their briefing, both parties challenged the trial court’s “preliminary”
findings, and Huml and Slowboy emphasized, among other things, the evidence that
supported their affirmative defense of substantial truth. Over one year later, on July
22, 2008, the trial court signed a final judgment, ordering that the parties take nothing
on their claims and counterclaims. On August 11, 2008, Rafes filed a request for
findings of fact and conclusions of law. See Tex. R. Civ. P. 296. On September 11,
2008, Rafes filed a notice of past due findings of fact and conclusions of law. See
Tex. R. Civ. P. 297. The trial court did not enter findings of fact and conclusions of
law.
Findings of Fact and Conclusions of Law
          In its first issue, Rafes argues that the trial court erred in not filing the
requested findings of fact and conclusions of law because the trial court was required
to do so. See id. In response, Huml and Slowboy assert that the trial court made
implicit findings and argue, alternatively, that the trial court’s failure to file findings
of fact and conclusions of law did not harm Rafes because “the facts in this case are
not in dispute.”



          Here, Rafes timely filed its request for findings of fact and conclusions of law
within twenty days after the judgment was signed. See Tex. R. Civ. P. 296. 
However, Rafes untimely filed its notice of past due findings of fact and conclusions
of law, thirty-one days after filing its original request for findings of fact and
conclusions of law.


 See Tex. R. Civ. P. 297 (providing that notice of past due
findings of fact and conclusions of law shall be filed within thirty days after filing the
original request). Because Rafes untimely filed its notice of past due findings and
conclusions, we hold that it has waived its right to complain about the trial court’s
failure to file findings and conclusions. See Averyt v. Grande, Inc., 717 S.W.2d 891,
895 (Tex. 1986); Las Vegas Pecan & Cattle Co. v. Zavala County, 682 S.W.2d 254,
255 (Tex. 1984); see also Alpert v. Crain, Caton & James, P.C., 178 S.W.3d 398, 410
(Tex. App.—Houston [1st Dist.] 2005, pet. denied) (holding that complete failure to
file the notice required by rule 297 waives any issue concerning the trial court’s
failure to file findings of fact and conclusions of law); Fleming v. Taylor, 814 S.W.2d
89, 91 (Tex. App.—Corpus Christi 1991, no writ) (holding that party that untimely
filed notice thirty-two days after original request waived complaint on appeal
regarding trial court’s failure to file findings of fact and conclusions of law). 
          We overrule Rafes’s first issue.
Affirmative Defense of Substantial Truth
          In its third issue, Rafes argues that the trial court erred in entering the
take-nothing judgment against it on its claims against Huml and Slowboy because the
evidence is legally and factually insufficient to support a finding in favor of Huml and
Slowboy on their “defensive theories.” 
          In a trial to the court where no findings of fact or conclusions of law are filed,
the trial court’s judgment implies all findings of fact necessary to support it. Pharo
v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996). When a reporter’s record is
filed, as in this case, the implied findings are not conclusive, and a party may
challenge the both the legal and factual sufficiency of the evidence to support these
implied findings. BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex.
2002); In re Estate of Rhea, 257 S.W.3d 787, 790 (Tex. App.—Fort Worth 2008, no
pet.). When legal and factual sufficiency issues are raised, the applicable standard of
review is the same as that to be applied in the review of jury findings. Roberson v.
Robinson, 768 S.W.2d 280, 281 (Tex. 1989). The judgment must be affirmed if it can
be upheld on any legal theory that finds support in the evidence. Worford v. Stamper,
801 S.W.2d 108, 109 (Tex. 1990); Doe v. Tarrant County Dist. Attorney’s Office, 269
S.W.3d 147, 152 (Tex. App.—Fort Worth 2008, no pet.). 
          Although we recognize that we are not bound by the trial court’s preliminary
oral findings, and that such findings cannot serve as a substitute for actual findings
of fact and conclusions of law, we begin our analysis by examining the sufficiency
of the evidence to support the trial court’s implied finding that Rafes’s claims are
barred by the affirmative defense of substantial truth.


 
          We will sustain a legal sufficiency or “no-evidence” challenge if the record
shows one of the following: (1) a complete absence of evidence of a vital fact, (2)
rules of law or evidence bar the court from giving weight to the only evidence offered
to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a
scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact.
City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005). In conducting a legal
sufficiency review, a “court must consider evidence in the light most favorable to the
verdict, and indulge every reasonable inference that would support it.” Id. at 822. 
If there is more than a scintilla of evidence to support the challenged finding, we must
uphold it. Formosa Plastics Corp. USA v. Presidio Eng’rs & Contractors, Inc., 960
S.W.2d 41, 48 (Tex. 1998). If the evidence at trial would enable reasonable and
fair-minded people to differ in their conclusions, then the trier of fact must be allowed
to do so. Keller, 168 S.W.3d at 822; see also King Ranch, Inc. v. Chapman, 118
S.W.3d 742, 751 (Tex. 2003). “A reviewing court cannot substitute its judgment for
that of the trier-of-fact, so long as the evidence falls within this zone of reasonable
disagreement.” Keller, 168 S.W.3d at 822.
          In conducting a factual sufficiency review, we must consider, weigh, and
examine all of the evidence that supports or contradicts the trier-of-fact’s
determination. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989);
London v. London, 192 S.W.3d 6, 14–15 (Tex. App.—Houston [14th Dist.] 2005, pet.
denied). We may set aside the judgment only if the evidence that supports the finding
is so contrary to the overwhelming weight of the evidence as to be clearly wrong or
unjust. Cain v. Bain, 709 S.W.2d 175, 175 (Tex. 1986). “In a bench trial, the trial
court is the sole judge of the credibility of the witnesses, assigns the weight to be
given their testimony, may accept or reject all or any part of their testimony, and
resolves any conflicts or inconsistencies in the testimony.” Rich v. Olah, 274 S.W.3d
878, 884 (Tex. App.—Dallas 2008, no pet.). “We may not pass upon the credibility
of the witnesses or substitute our judgment for that of the trier of fact, even if a
different answer could be reached upon review of the evidence.” Id.
          To maintain a cause of action for defamation, a plaintiff must establish that the
defendant (1) published a statement about the plaintiff; (2) that was defamatory; (3)
while acting with either actual malice, if the plaintiff was a public official or public
figure, or negligence, if the plaintiff was a private individual, regarding the truth of
the statement. WFAA-TV v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998); Henriquez
v. Cemex Management, Inc., 177 S.W.3d 241, 251 (Tex. App.—Houston [1st Dist.]
2005, pet. denied); Grotti v. Belo Corp., 188 S.W.3d 768, 774 (Tex. App.—Fort
Worth 2006, pet. denied). “The truth of the statement in the publication on which an
action for libel is based is a defense to the action.” Tex. Civ. Prac. & Rem. Code
Ann. § 73.005 (Vernon 2005). A defendant may also defeat a libel claim by
establishing the substantial truth of the statement. Grotti, 188 S.W.3d at 774 (citing
McIlvain v. Jacobs, 794 S.W.2d 14, 15–16 (Tex. 1990)). To determine if a
publication is substantially true, “we consider whether the alleged defamatory
statement was more damaging to the plaintiff’s reputation, in the mind of the average
person, than a truthful statement would have been,” and “[w]e look at the ‘gist’ of the
publication “to determine whether it is substantially true.” Id. (citations omitted). 
The defense of truth does not require proof that the alleged defamatory statement is
literally true in every detail; substantial truth is sufficient. Gustafson v. City of
Austin, 110 S.W.3d 652, 656 (Tex. App.—Austin 2003, pet. denied); Howell v.
Hecht, 821 S.W.2d 627, 631–32 (Tex. App.—Dallas 1991, writ denied).
          Here, the trial court heard sufficient evidence to support an implied finding that
the turbocharger was defective, or, as the trial court bluntly summarized, a “bad
product.” The trial court also heard sufficient evidence to support an implied finding
that the statements made in the internet article were true, or, even if not literally true
in every detail, substantially true. For example, Johnston, Huml and Slowboy’s
expert, who was an independent consultant for turbocharger engineering issues and
patent consulting,


 testified that he reviewed the internet article and Rafes’s
turbocharger and that the “main concerns” expressed by Huml regarding Rafes’s
turbocharger in the internet article “were all valid.” Johnston further explained that
he also had “serious concerns” about “every part” of the turbocharger about which
Huml had raised concerns and most of his concerns were “for the same reasons”
generally expressed by Huml in the article. Johnston further stated that he had
additional “serious concerns” about other design and manufacturing problems
associated with Rafes’s turbocharger that Huml had not identified in the article. After
Johnston had explained his concerns about these additional problems with the
turbocharger, the trial court initially stated that it wanted to focus on statements
contained in the article, but then stated that it agreed that evidence of these additional
problems was relevant to the issue of damages. 
          Regarding the specific statements made in the internet article, Johnston agreed
that the turbocharger had been reproduced with a part number from a competing
Mistsubishi turbocharger product and that “using the exact same part number would
be intended to cause confusion in the marketplace and was a slippery slope from a
legal standpoint.” Johnston stated that Rafes should have not have reproduced the
exact same part number on its turbocharger because it left the impression that Rafes
was “intentionally trying to cause confusion.” Johnston also stated, consistent with
Huml’s remarks in the article, that there were strong reasons to be concerned about
the quality of materials used by the parties that had produced Rafes’s turbocharger
in Taiwan. 
          Regarding the specifications of the turbocharger that Huml discussed and
criticized in the internet article, Johnston stated that Huml’s concerns about the
blade’s thickness and weight were all reasonable. Regarding the thickness of the
blade used on Rafes’s turbocharger compared to the thickness of the blade on the
genuine Mitsubishi product, Johnston explained that this indicated a lack of “casting
quality control” on Rafes’s part and, given the fact that Rafes’s blade was twice as
thick, Rafes must have used “low cost methods of manufacturing it.” When asked
whether he agreed with the statement in the article that the material used in Rafes’s
turbocharger would not hold up to the heat and abuse of a typical user, Johnston
explained that if the part had an air pocket it in it, which he considered as a potential
explanation for the blade’s weight difference from that used in the genuine Mitsubishi
product, this could lead to immediate or long term failure of the turbocharger. 
Johnston, like Huml, believed that parts of Rafes’s turbocharger were inferior based
upon coloration differences, and he stated that his conclusions regarding the
inferiority of the parts were later confirmed. He also stated that it was reasonable,
based upon common industry knowledge, for Huml to raise concerns about the
quality of the turbocharger based upon these coloration observations. 
          During his testimony, Johnston agreed that there were some inaccuracies in the
internet article. For example, when asked about the specific statement in the article
that Rafes’s turbocharger was made of some type of “powdered metal,” Johnston
remarked that Huml had likely intended to refer to a “powdery surface,” but Johnston
explained this distinction and the likely intent of Huml’s statement. Johnston also
admitted to other inaccuracies in the internet article, but based upon Johnston’s
testimony, the trial court would have been entitled to conclude that such inaccuracies
were minor. The testimony reveals that Johnston considered these inaccuracies to be
insignificant. Additionally, in concluding his testimony, Johnston opined that Huml’s
conclusions and actions were reasonable when compared to the standard of a quality
assurance inspector in the industry. 
          An abstract of Johnston’s expert report was also introduced into evidence. In
the abstract of this report, Johnston stated, after detailed explanation, that “Huml’s
essential comments and concerns were both technically correct, and reasonable.” 
Johnston further explained that, in evaluating the turbocharger, Huml had used
“common industry practice” by comparing the color of the turbocharger with a known
standard part. Johnston also noted in the article that Huml simply identified possible
critical noncomplying components, but stressed that Rafes had recommended further
scientific analysis, and Rafes alerted users to use caution pending further analysis.           We recognize that Rafes presented testimony to dispute Huml’s and Johnston’s
testimony. Rafes also presented an expert who compared Rafes’s turbochager against
the internet article and disputed the accuracy of many of the statements made in the
article. However, the competing experts in this case disagreed on several important
points, and Johnston challenged the accuracy of Rafes’s expert’s opinions. Johnston
specifically testified that Rafes’s expert had made at least three mistakes in examining
the turbocharger and preparing his findings. The trial court heard all of this evidence,
including the evidence from the dueling experts regarding the accuracy of the
statements in the internet article, and the trial court, as the sole judge of the credibility
of the witnesses, was entitled to accept or reject all or any part of the witnesses’
testimony. Rich, 274 S.W.3d at 884. 
          Moreover, from our review of the record, it is clear that the trial court could
have disbelieved at least some of the testimony presented by Rafes and his expert. 
For example, although Rafes offered an explanation as to why it used as a product
number on its turbocharger the product number used on the Mitsubishi product, the
trial court was not required to believe this explanation. Moreover, the trial court
could have determined that the testimony provided by Rafes and his employee about
an internet advertisement for the turbocharger was equivocal and lacked credibility. 
Huml and Slowboy also introduced other evidence, including consumer
correspondence, that indicated that at least some consumers had been confused about
the origin of Rafes’s turbocharger and whether it was a genuine Mitsubishi product
or a product designed and or manufactured, at least in part, by Rafes.
          In sum, the trial court was presented with ample evidence substantiating the
“gist” of the statements contained in the internet article regarding the production and
manufacturing of the turbocharger. Accordingly, we hold that the evidence is legally
and factually sufficient to support the trial court’s implied finding that Rafes’s claims
against Huml and Slowboy were barred by the affirmative defense of substantial
truth. We further hold that the trial court did not err in entering the take-nothing
judgment against Rafes.
          We overrule Rafes’s third issue.


 
Conclusion
          We affirm the judgment of the trial court. 
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Jennings, Higley, and Sharp.